## UNITED STATES v. CATTARAUGUS COUNTY.

### Civil Action No. 2724.

District Court, W. D. New York.

April 8, 1947.

George L. Grobe, U. S. Atty., and John J. Mahoney, Sp. Atty., both of Buffalo, N. Y., and Floyd L. France, Department of Justice, of Washington, D. C., for plaintiff.

James S. Pierce, Co. Atty., of Franklinville, N. Y. (Henry S. Manley, Asst. Atty. Gen., of counsel), for defendant.

KNIGHT, District Judge.

The substance of the complaint herein is stated in the opinion of this court in United

States v. Cattaraugus County, D.C., 67 F.Supp 294, at page 296. It gave the reasons for denying defendant's motion to dismiss the complaint.

After denial of the motion, defendant served an answer containing eight separate defenses, to wit: (1) The complaint fails to state a claim upon which relief can be granted, (2) the Seneca Nation of Indians is the real party in interest and plaintiff may not sue alone without joining it, (3) the cause of action is in effect against New York State and none exists or has existed against defendant, (4) the State duly appropriated the lands and ever since has possessed them for highway purposes, (5) Congress expressly consented to the appropriation by Act of February 19, 1875, 18 Stat. 330, and acts amending it, (6) the Seneca Nation expressly consented to the appropriation by resolution of its Council duly adopted, (7) the Secretary of the Interior and the Commissioner of Indian Affairs duly approved and permitted such appropriation and condemnation, which was duly prosecuted to final order or judgment, the Seneca Nation being a party to such proceeding and represented by an attorney, (8) unnecessary delay and laches, lack of equity and opposition "to the previous positions of the United States and the Seneca Nation."

Plaintiff, in its brief, alleges: "The condemnation proceeding which purports to vest title in Cattaraugus County is a cloud upon the title of the Indians * * *. The only purpose of the present action is to remove the cloud on the title of the Indians, created by that judgment."

The complaint prays for judgment "1. Declaring said condemnation proceedings to be without authority and of no effect in so far as the lands described are concerned, and setting the same aside and perpetually enjoining the defendant from asserting any right, title or interest in or to said land or any part of it or from interfering with the use and possession of the Seneca Nation of Indians thereto. 2. That the Seneca Nation of Indians be adjudged to be the owner and entitled to possession of said lands described in the complaint and every part thereof."

At the trial of this action on December 16, 1946, plaintiff offered in evidence the petition for condemnation, the commissioners' report, and the order of condemnation contained in the judgment roll of the N. Y. Supreme Court action brought by this defendant and dated January 21, 1942. Guy C. Fargo, defendant's county clerk, produced this evidence for plaintiff. Defendant offered in evidence two letters of the Department of the Interior.

Plaintiff's three exhibits are all entitled as follows:

"Supreme Court: County of Cattaraugus.

"In the Matter of the Application of the Board of Supervisors of the County of Cattaraugus to acquire certain lands in the Town of Red House in said County for a right of way for the construction of the East Randolph-Salamanca Pt. 2A C.H. 1854, from T. E. Burgett."

The petition, verified September 15, 1932, recites: "1. That your petitioner is the Court of Cattaraugus acting through its Board of Supervisors * * *. 2. That your petitioner desires to acquire by condemnation the following described property: (as described in the complaint). 3. That the Bureau of Highways of the Department of Public Works of the State of New York, pursuant to * * * Sections 148 to 152 of the Highway Law of the State of New York, Consol.Laws, c. 25, has directed your petitioner to acquire the lands described in paragraph two of this petition by reason of the fact that the East Randolph-Salamanca Co. Highway deviates from the line of the old highway across the lands owned by the said Theo. E. Burgett and Pearl Burgett and occupied by the said 'John' Baker * * * and that such deviation was necessary and proper according to the plans and specifications of the Department of Public Works of the State of New York, and that your petitioner is required by Section 148 of the Highway Law to provide the requisite right of way for such deviation. * * * 4. Upon information and belief that the owner of said property is T. E. Burgett * * * and that said 'John' Baker lives on the said premises * * * and that the Cattaraugus County Bank, by reason of a

mortgage, * * * and the Seneca Nation of Indians by reason of a life tenancy, have or claim to have some interest in or lien upon the said premises. 5. That your petitioner has been unable to agree with the owner of said property as to the compensation to be paid therefor * * * does not believe that the price demanded therefor by the owner is a reasonable and just compensation therefor * * * 7. That all preliminary steps required by law to entitle your petition (sic) to institute these proceedings have been taken by it and upon information and belief that the State of New York has either completed its work for highway purposes upon the said premises or intends in good faith to immediately commence the said construction and that your petitioner makes this application in good faith and in compliance with the law requiring and directing it to acquire such right of way."

Petitioner, therefore, "prays that pursuant to Section 150 of the Highway Law, as amended, it be adjudged that the public use requires the condemnation of the real property herein described; that the petitioner is entitled to take and hold such property for the public use specified therein; that three commissioners of appraisal be appointed to ascertain and determine the compensation to be paid therefor to the owners of the land to be acquired and to all persons interested therein * * *."

The three commissioners filed their report on July 31, 1941. They recite that they viewed the premises, heard proofs and that named attorneys appeared for Cattaraugus County, for Pearl L. Burgett, for Cattaraugus County Bank, and for the Seneca Nation of Indians. They reported as follows:

"4(a). We find the damages for taking the parcel of land constituting approximately 2.10 acres out of a total of approximately 12 acres, as shown on map C.H.1854, Catt. Co., and entitled 'State of New York Department of Public Works Division of Highway, granted to be provided for East Randolph-Salamanca Pt. 2 C.H.1854, Catt. Co. from Erie R. R. Co., reputed owner, T. E. Burgett reputed lessee' to be the sum of $2600.00 and interest from October 1st, 1930, which was the date on which the said plaintiff entered upon and took possession of said lands; that said damages originally accrued to and were owned by Theo. E. Burgett, who died during the pendency of these proceedings, on or about November 31st, 1936, leaving a last will and testament under the terms of which he devised and bequeathed all of his property to his wife, Pearl L. Burgett, to whom said award should be made.

"(b) We find that the damages to the reversionary interest, the Seneca Nation of Indians, to be the sum of $400.00.

"(c) That the premises taken by the County of Cattaraugus for the public improvements aforesaid, as well as that portion of the property owned by Theo. E. Burgett which was not taken for such purpose, was and is subject to a mortgage held by the Cattaraugus County Bank * * * upon which is now unpaid * * * $5,990.09 with interest (specified) * * * and that said Cattaraugus County Bank also has a lien incident to and as a part of said mortgage in the sum of $609.81, being for taxes paid upon the mortgaged premises, insurance upon the buildings thereon and for renewals paid or tendered to the Seneca Nation of Indians to preserve the term of said Indian Leases on said Theo. E. Burgett's land being held under lease for ninety nine years from the Seneca Nation of Indians."

The order in the condemnation proceeding, entered on January 21, 1942, confirmed the report and awards of said commissioners. It awarded "1. To Seneca Nation of Indians and to Charles E. Congdon, its attorney, the sum of $649.40 the same including the award of $400.00 principal and the sum of $249.40 interest * * * as compensation for its reversionary rights in the property condemned and land so taken for such public improvement, all as stated in said report. 2. To the Cattaraugus County Bank * * * for the account of Pearl L. Burgett, individually and as executrix * * * of Theo. E. Burgett, deceased, owner, the sum of $4,221.00 the same including the award in the principal sum of $2600.00, and the further sum of $1621.00 interest * * * as compensation for the damages sustained by such owner of the

lands so taken for said public improvement, all as stated in said report * * *."

In none of plaintiff's three exhibits is there any mention of the United States. The petition for condemnation purports to have been made pursuant to Sections 148 and 150, now Sections 30 and 32, of the Highway Law of the State of New York. These are general provisions. The specific one is Section 53, formerly Section 157, which reads: "The department of public works shall have exclusive supervision and control, in the construction, maintenance and improvement of all highways and bridges constructed or to be constructed by the state on any Indian reservations, and may make and enforce such reasonable rules and regulations concerning their use as it shall deem necessary." No provision is made for obtaining the consent of the United States Government.

The complaint alleges: "The said condemnation proceeding was wholly without authority and said court was without jurisdiction to enter said judgment in condemnation as to the lands herein described in the absence of the United States, as a party to said proceedings, being tribal lands of the Seneca Nation of Indians, may not be taken from them by such proceedings."

The U. S. Constitution (Art. I, Sec. 8, sub. div. 3) declares that Congress shall have power "to regulate Commerce * * * with the Indian Tribes." Congress has enacted a number of statutes relating to Indians, now collected under Title 25 of the United States Code Annotated. Chapter 8 thereof deals with "Rights Of Way Through Indian Lands," and the first section (311) provides:

"The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation." .

The statute does not expressly state that the opening and establishment of a public highway upon an Indian reservation by a condemnation proceeding in accordance with state law but without the permission of the Secretary of the Interior is void or voidable. There is no provision for making the United States a party to any condemnation proceeding.

In State of Minnesota v. United States, 305 U.S. 382, 386, 59 S.Ct. 292, 294, 83 L. Ed. 235, it was held:

"The United States is an indispensable party defendant to the condemnation proceedings. A proceeding against property in which the United States has an interest is a suit against the United States. * * * It is confessedly the owner of the fee of the Indian allotted lands and holds the same in trust for the allottees. As the United States owns the fee of these parcels, the right of way cannot be condemned without making it a party."

In the case at bar, however, the fee of the condemned land was not allotted (25 U.S.C.A. § 339); United States v. Erie County, N. Y., D.C., 31 F.Supp. 57, 59 and was not owned by the United States. In People ex rel. Ray v. Martin, 294 N.Y. 61, 60 N.E.2d 541, it is said:

"The Allegany Reservation of the Seneca Indians is wholly within New York State, has an area of about forty-two square miles and extends along both sides of the Allegany River, north from the Pennsylvania border. It is a part of the much more extensive lands occupied by the Seneca Nation before the American Revolution. Before our Federal Constitution was adopted, those Seneca lands were within the bounds of the State of New York. The Allegany Reservation was accordingly, not created by the Federal Government out of United States Government lands within the State, and was never at any time territory of the United States. Seneca Nation v. Christie, 126 N.Y. 122, 136, 27 N.E. 275, affirmed [Seneca Nation v. Christy], 162 U.S. 283, 16 S.Ct. 828, 40 L.Ed. 970. * * * But, while the tribal Indians, being wards of the national government, are not generally amenable to State laws nevertheless the land in any State occupied by Indians is still part of the State unless expressly ex-

cluded therefrom. See Thomas v. Gay, 169 U.S. 264, 274, 275, 18 S.Ct. 340, 42 L.Ed. 740; Utah & Northern Railway v. Fisher, 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542." 294 N.Y. at page 69, 60 N.E.2d at page 543.

In Seneca Nation v. Christy, 162 U.S. 283, 285, 16 S.Ct. 828, 829, 40 L.Ed. 970, it is said:

"By a treaty between the Six Nations of Indians, which included the Senecas, and the United States, dated November 11, 1794, at Canandaigua, N. Y.,—Timothy Pickering acting as commissioner on behalf of the United States, (7 Stat. 44),—it was agreed that the lands of the Senecas situated in the western part of the state of New York, described in the treaty (embracing the land in controversy), 'shall remain theirs until they choose to sell to the people of the United States who have the right to purchase.' "

Plaintiff, however, urges: "The location of title is not controlling and the United States has the same interest in the Indians and their restricted property regardless of whether title is in the United States or in the Indians," and cites Town of Okemah v. United States, 10 Cir., 140 F.2d 963, and United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326. Both cases involved lands allotted or restricted by the United States. In the latter case it is said: "Restricted Indian land is property in which the United States has an interest." 322 N.S. at page 366, 64 S.Ct. at page 545, 88 L Ed. 1326.

In People ex rel. Ray v. Martin, 294 N. Y. 61, 60 N.E.2d 541, it is further said: "The exclusive control of the Federal Government over Indians extends only so far as is required by the pupilage of the wards and has to do only with government and protection of the Indians themselves," citing Utah & Northern Railway v. Fisher, 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542.

Were the interests of the Seneca Nation of Indians duly protected by the United States in this condemnation proceeding? To prove that they were, defendant introduced Exhibits A and B.

Exhibit A is a letter, dated April 23, 1928, with the letter-head of United States Department of the Interior Washington, signed by E. B. Meritt, Assistant Commissioner, and addressed to The Honorable The Secretary of the Interior. It reads as follows:

"There is transmitted letter dated April 19, 1928, from the Allegany State Park Commission, D. H. Ames, Executive Secretary, Salamanca, New York, addressed to Hon. Daniel A. Reed, House of Representatives, and referred here by him, concerning right of way for the State and Federal Aid Highway from the west boundary line of the Allegany Reservation at or near Steamburg, New York. Accompanying the letter herewith is a copy, duly authenticated by Walter Kennedy, Clerk of the Seneca Nation, of each of two resolutions dated April 6 and April 7, 1928, respectively, adopted by the council of the Seneca Nation, approving and consenting to the laying out of the highway mentioned, including three branches thereof, provided the individual owners of property which may necessarily be taken for such highways shall be justly compensated. Although no expression of the views of the Special Agent in Charge of the New York Indian Agency is at hand, it is thought unnecessary to delay action by referring the matter to him, and it is accordingly recommended that the resolutions adopted by the council of the Seneca Nation as evidenced by the copies herewith, be approved, and permission granted for the New York State Highway Commission, or other proper authorities of the State of New York, to proceed with the work of laying out, constructing or improving the highways mentioned, upon the express understanding and condition that within 60 days after the location of the highways has been definitely fixed the State Highway Commission, or other proper authorities of the State of New York, will file formal right of way application accompanied by map of definite location, in duplicate, drawn on tracing linen, make payment of all damage done, if any, to the individual members of the Seneca Nation, and otherwise comply with the provisions of section four of the Act of March 3, 1901 (31 Stat.L., 1058-1084 [25 U.S.C.A. § 311]), and the regulations of this Department thereunder."

At the foot of this letter is found: "Approved: Apr 25 1928 John H. Edwards Assistant Secretary."

The two resolutions of the Council of the Seneca Nation of Indians, passed on April 6 and 7, 1928, read as follows:

The resolution of April 6, 1928, passed by a vote of 11 to 2, reads:

"Resolved: That this Council 'Grant' to the State Highway Commission of the State of New York, the right to improve the present Highway now located on the Allegany Reservation, From the West boundary line of the City of Salamanca, to the boundary line of said Allegany Reservation where same now crosses the said Highway at, or near Steamburg, N. Y., and said Highway to be 66 feet in width, and that said State Highway Commission is given the right to straighten said Highway where same may be necessary.

"And be it further resolved: That the Seneca Nation of Indians in Council assembled does hereby approve and consent to the laying out of the Highway or Highways as aforesaid to the end that the individual Indian owners of property, which may necessarily be taken for said Highways, shall be justly compensated."

The resolution of the Council, passed on April 7, 1928, by 14 unanimous votes, reads:

"Resolved: That this Council 'Grant' to the Highway Commission of the State of New York, The right to improve the following branches of the Highway leading from the West boundary line of the City of Salamanca to the boundary line of the Allegany Reservation where said boundary line of said Allegany Reservation crosses said Highway, viz: The Branch of the above mentioned Highway commencing at the mouth of 'Robinson Run' and running thence along the West side of the Allegany River to Quaker Bridge; Thence up Quaker Run to the Allegany Reservation line near the Quaker School, And also a Branch of the above mentioned Highway commencing at the settlement of Red House and running up Big Red House to the Allegany Reservation line near the Old Chemical Works.

"Further resolved: That the Seneca Nation of Indians, in Council assembled does hereby approve and consent to the laying out of the Highway or Highways as aforesaid to the end that, the individual Indian owners of property, which may necessarily be taken for said Highways, shall be justly compensated.

"Further resolved: That said 'Branch Highways' shall be 66 feet in width."

Defendant's Exhibit B is a letter on the letterhead of United States Department of the Interior Office of the Secretary Washington, signed by John H. Edwards, Assistant Secretary, dated September 26, 1928, addressed to Hon. Albert Ottinger, Attorney General, State of New York, and reads as follows:

"The receipt is acknowledged of your letter of September 19, 1928, asking for an expression of our views as to the operations of the State of New York under section 4 of the Act of March 3, 1901, 31 Stat. L., 1058–1084, 25 U.S.C.A. § 311, to procure a permanent right to the use of certain Indian land within the Allegany Indian Reservation necessary in effecting the elimination of highway-railroad crossings at grade as provided in the Act of the New York State Legislature of March 27, 1928, Chapter 678.

"Section 4 of the Act of March 3, 1901 above cited is the only law specifically authorizing the Secretary of the Interior to permit the taking by the proper State or local authorities of Indian lands needed for public highway purposes. A copy of the regulations, issued by this Department under the Act is inclosed herewith.

"While it is believed that the State of New York has the right in the exercise of its sovereign power to acquire under its laws of eminent domain any right of way over Indian land within its boundaries needed by highway or other public purposes, there might be as you suggest certain advantages which would accrue from obtaining the sanction of this Department, and to that end, in the event a satisfactory agreement is concluded with the Indians and submitted to this Department for approval, appropriate action will be promptly taken."

The Act of March 3, 1901, is entitled: "An Act Making appropriations for the

current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June thirtieth, nineteen hundred and two, and for other purposes." Section 4 thereof is the same as Section 311 of Title 25 U.S.C.A. above quoted.

The regulations issued by the Department of the Interior and mentioned in said letter of September 26, 1928, were not offered in evidence. It does not appear that anything in compliance therewith was done by the State of New York or Cattaraugus County after the receipt of that letter. There is no mention of the United States or of its Department of the Interior in any of plaintiff's three exhibits. It is clear that neither of defendant's two exhibits contain an unqualified approval by the Secretary of the Interior of the condemnation proceedings. Must they now be declared "to be without authority and of no effect" as prayed by plaintiff?

The last paragraph of said letter of September 26, 1928, contains this significant admission: "While it is believed that the State of New York has the right in the exercise of its sovereign power to acquire under its laws of eminent domain any right of way over Indian lands within its boundaries needed for highway or other public purposes, there might be as you suggest certain advantages which would accrue from obtaining the sanction of this Department * * *." Neither Section 4 of the Act of March 3, 1901, nor Section 311 of Title 25 U.S.C.A. expressly makes the permission of the Secretary of the Interior an essential preliminary to condemnation.

All of the Indian lands described in the complaint are in the Village of Red House. Section 8 of the Act of Congress of February 19, 1875, 18 Stat. 330, provides: "That all laws of the State of New York now in force concerning the laying out, altering, discontinuing, and repairing highways and bridges shall be in force within said villages, and may, with the consent of said Seneca Nation in council, extend to, and be in force beyond, said villages in said reservations, or in either of them; and all municipal laws and regulations of said

State may extend over and be in force within said villages." Among the villages named in this Act is the village of Red House within the Allegany Reservation. (Sec. 2)

While the phrase "now in force" may be construed as a limitation to the laws in force when the Act became effectice—Goillotel v. Mayor, etc., City of New York, 87 N.Y. 441, 444; United States Trust Co. v. Nathan, 196 App.Div. 126, 129, 187 N.Y.S. 649—the latter part of said Section 8 contains no such limitations. It provides absolutely that "all municipal laws and regulations of said State may extend over and be in force within said villages." Section 8 may be construed as approving the highway laws then in force but not disapproving highway laws to be enacted thereafter.

The legislative history of the Act of February 19, 1875, is expounded in People ex rel. Ray v. Martin, 294 N.Y. 61, 74–77, 60 N.E.2d 541, 66 S.St. 307, affirmed 326 U.S. 496. The Court says: "Relator argues that the specific reference in the above quoted 1875 Congressional statute (said Section 8) to State laws concerning highways and bridges shows that the later-used term 'municipal laws' had no application to State laws. On the contrary, we think that the statute itself shows why the highway and bridge laws were separately mentioned, i. e., because the Seneca Nation in council was to have the right to extend those laws to the whole reservation." 294 N.Y. at page 77, 60 N.E. 549.

In Goddard v. Frazier, 10 Cir., 156 F.2d 938, certiorari denied 67 S.Ct. 124, it is said: "The only right of the Indian is to have the United States made a party to the proceedings (partitioning of restricted Indian land) in order to have the benefit of its guardianship. The Indian has no greater interest and can assert no greater right in the land than that of the Government as his guardian." 156 F.2d at page 942. The court further said: "There is nothing to show that the land was worth in excess of its appraised value, or that the Indians did not receive their proportionate share of the sale price." 156 F.2d at page 943.

420

■ In the case at bar it is not contended that the condemnation proceedings were not in accord with the "municipal laws and regulations" of the State of New York or that the prices paid to Mrs. Burgett, widow of the lessee, and to the Seneca Nation of Indians were unfair or unjust. The condemned land had not been allotted by the United States and was not owned by the United States. The latter was not a necessary party to the proceeding. The Seneca Nation was represented by an attorney. Cattaraugus County in instituting the proceeding was acting merely as an agent of the State of New York to acquire the land for a "State Highway" and was later reimbursed by the State for its expenditures incident thereto. United States v. Cattaraugus County, D. C., 67 F.Supp. 294, 296, 297.

Let judgment, therefore, be entered for the defendant, dismissing the complaint.