No. 80–1365. CONNECTICUT *v.* MOHEGAN TRIBE. C. A. 2d Cir. Certiorari denied.

JUSTICE REHNQUIST, dissenting.

This case involves the scope and applicability of the Nonintercourse statute, first enacted in 1790 and now codified in 25 U. S. C. § 177, which prohibits the sale of Indian land unless conveyed by a treaty approved by the Federal Government. The Court of Appeals for the Second Circuit held that the terms of the Nonintercourse statute apply to all land throughout the United States. Because the decision below casts doubt on the title to land in millions of acres in the eastern part of the United States, I would grant the petition for certiorari.

In 1977, respondent brought suit to obtain possession of approximately 600 acres of land currently in the possession of the State of Connecticut. Respondent claimed that it owned this land from "time immemorial" and that the land was subsequently acquired from respondent without the approval of the United States, in violation of the Nonintercourse statute of 1790 and its successor statutes. The District Court denied petitioner's motion to dismiss, but certified the question for interlocutory appeal pursuant to 28 U. S. C. § 1292 (b).

The Court of Appeals for the Second Circuit affirmed. 638 F. 2d 612 (1980). Petitioner argued that the Nonintercourse

statute applies only to Indian land in "Indian country," which would be primarily western lands as defined in the various Indian Trade and Intercourse Acts, and not to all Indian land. Petitioner also pointed to a provision in several of the Nonintercourse statutes which stated that nothing in the statute prohibited trade or intercourse with Indians living on land "surrounded by settlements." See *id.*, at 618. It was petitioner's view that Indian land in Connecticut was exempt from the provisions of the Nonintercourse statute, since it was clearly "surrounded by settlements." The court observed:

> "In these suits, [petitioner] states have marshalled historical evidence which suggests that the eastern Indian tribes and their lands were always understood to be under the jurisdiction of the states. While these arguments have been held to be unavailing in a number of other contexts, such as whether the eastern tribes were properly considered 'tribes' under the protection of the federal government, and whether they were considered 'tribes' for purposes of sovereign immunity to suit, *until this action,* no court has had to address directly the issue of whether the Nonintercourse statute was intended to apply to land held by the eastern tribes. The State's argument is admittedly appealing in that it would explain why both the states and the federal government have ignored so completely what the Indians assert to be the dictates of the Nonintercourse statute." *Id.*, at 615 (footnotes omitted and emphasis added).

Notwithstanding this concession, the Court of Appeals, after canvassing the history of the Indian statutes and relevant aspects of Indian land tenure, ultimately concluded that the Nonintercourse statute applied to all Indian land, whether or not it was in Indian country, and thus included the land claimed by respondent.

There can be little doubt that the Court of Appeals' un-

precedented holding makes millions of acres in the eastern United States vulnerable to Indian land-title claims. For that reason alone, I believe that this Court should grant plenary consideration over this case and determine this vitally important issue. Though I do not propose here to address the merits of the decision below, I do note that the Court of Appeals struggled with two somewhat conflicting decisions of this Court, *Oneida Indian Nation* v. *County of Oneida,* 414 U. S. 661 (1974), and *Wilson* v. *Omaha Indian Tribe,* 442 U. S. 653 (1979). The Court of Appeals felt that *Oneida* supported, at least obliquely, the position of respondent here, while *Wilson* supported that of the petitioner.

As support for the proposition that Indian title to land in the 13 original States could not be extinguished without the consent of the Federal Government, the Court of Appeals cited this dicta from *Oneida:*

"The rudimentary propositions that Indian title is a matter of federal law and can be extinguished only with federal consent apply in all of the States, including the original 13. It is true that the United States never held fee title to the Indian lands in the original States as it did to almost all the rest of the continental United States and that fee title to Indian lands in these States, or the pre-emptive right to purchase from the Indians, was in the State, *Fletcher* v. *Peck,* 6 Cranch 87 (1810). But this reality did not alter the doctrine that federal law, treaties, and statutes protected Indian occupancy and that its termination was exclusively the province of federal law." 414 U. S., at 670 (footnote omitted) (quoted in 638 F. 2d, at 625).

The meaning of this passage is somewhat unclear, since a footnote to that passage, omitted by the Court of Appeals here, suggests that the United States *does* hold fee title to some portion of Indian land. The footnote reads:

"See also *Cherokee Nation* v. *Georgia,* [5 Pet.], at 38;

*Clark* v. *Smith,* 13 Pet. 195 (1839); *Lattimer* v. *Poteet,* 14 Pet. 4 (1840); *Seneca Nation* v. *Christy,* 162 U. S. 283 (1896). *'Outside of the territory of the original colonies, the ultimate fee is located in the United States and may be granted to individuals subject to the Indian right of occupancy.'* Federal Indian Law 599; *Missouri* v. *Iowa,* 7 How. 660 (1849)." 414 U. S., at 670, n. 6 (emphasis supplied).

And in a recent decision, *Wilson* v. *Omaha Indian Tribe, supra,* this Court took a more limited view of the territorial applicability of the Trade and Intercourse Acts. The Court held that the present-day descendant of § 22 of the 1834 Act, which establishes the burden of proof in land disputes between Indians and "a white person," did not apply to a suit between the State of Iowa and an Indian tribe. The Court relied on the fact that the original § 22 was incorporated into the 1834 Act which, in our view, was meant to apply only " 'to the whole Indian country.' " 442 U. S., at 667, quoting H. R. Rep. No. 474, 23d Cong., 1st Sess., 10 (1834). We explained that "it is apparent that in adopting § 22 Congress had in mind only disputes arising in *Indian country, disputes that would not arise in or involve any of the States."* 442 U. S., at 668 (emphasis supplied). Thus, in *Wilson,* the Court implicitly confirmed that the various versions of the Trade and Intercourse Acts were intended to apply only in Indian country.

I am not at all sure how the issue presented here should be finally resolved. It is clear to me, however, that numerous suits have been brought by Indian tribes in the eastern part of the United States asserting claims to large tracts of lands and that the decision below throws into uncertainty the validity of land titles throughout that area. Accordingly, I believe that the petition for certiorari should be granted in order to at least attempt to rectify that uncertainty.