**UNITED STATES of America**

v.

**Randy BUSHEY.**

**Crim. No. 84–66–1.**

United States District Court,
D. Vermont.

June 27, 1985.

George Terwilliger, Asst. U.S. Atty., Burlington, Vt., for plaintiff.

Charles R. Tetzlaff, Latham, Eastman, Schweyer & Tetzlaff, Burlington, Vt., for defendant.

## OPINION AND ORDER

COFFRIN, Chief Judge.

Defendant Randy Bushey has been indicted in several counts. Count 13, at issue here, charges defendant with a violation of 18 U.S.C. § 924(c), *as amended* Oct. 12, 1984, for the use or carrying of a firearm during and in relation to a crime of violence. The underlying crime is possession with intent to distribute narcotics, for which defendant was separately indicted under 21 U.S.C. § 841(a). Defendant has

moved to dismiss Count 13 on the ground that the underlying offense does not constitute a "crime of violence" as that term is defined statutorily. This motion is being decided in connection with a plea agreement between the defendant and the government. For the reasons set forth hereafter, we conclude that defendant's motion to dismiss should be GRANTED.

### Discussion

In the fall of 1984, Detective Roger Marcoux, an undercover agent for the Vermont Drug Task Force, engaged in several conversations with defendant concerning the distribution of cocaine.[1] On at least three occasions prior to November 30, the day defendant was arrested, defendant actually distributed cocaine to Marcoux, and on each of those occasions, defendant was carrying a firearm.

On November 30, the defendant met Marcoux in a hotel in order to sell him four ounces of cocaine. Each was armed and knew the other was armed, and throughout the course of the sale the defendant often placed his hand inside his coat where his firearm, a .45 caliber pistol, was held in a shoulder holster. Defendant was arrested immediately after the transfer of the cocaine.

1. This brief recitation of the facts is taken from the parties' Stipulation Regarding Evidence Concerning Count 13.

2. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 313 n. 9 (1983), *reprinted in*, 1984 U.S.Code Cong. & Ad.News, 3491 n. 9 (*summarizing effect of amended version of § 924(c)*). The former version of § 924(c) read in pertinent part as follows:

Whoever
(1) uses a firearm to commit *any felony* for which he may be prosecuted in a court of the United States, or
(2) carries a firearm unlawfully during the commission of *any felony* for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not more than one year nor more than ten years.

18 U.S.C.A. § 924(c) (1976) (emphasis added). The amended version, on the other hand, reads as follows:

The amended version of 18 U.S.C. § 924(c) was passed by Congress as part of the Comprehensive Crime Control Act of 1984 (CCCA). It differs from the former version in that it imposes a mandatory sentence, with no chance for parole, probation or suspension, and provides that the term of imprisonment may not run concurrently with any other term of imprisonment. It also expands the scope of predicate offenses by including violent misdemeanors, and limits the scope of predicate offenses by excluding all nonviolent felonies.[2] The underlying offense in this case, a felony, is possession with intent to distribute cocaine. The issue, then, is whether this would be considered a crime of violence within the meaning of section 924(c) *as amended* (hereafter, section 924(c)).

The term "crime of violence" is defined, for purposes of section 924(c), in 18 U.S.C. § 16, which was also added as part of the CCCA and did not come into effect until October 12, 1984. Section 16 defines a crime of violence as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the per-

Whoever, during and in relation to *any crime of violence,* including a crime of violence which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence, be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend *the sentence* of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

18 U.S.C.A. § 924(c) (Supp.1985) (emphasis added).

son or property of another may be used in the course of committing the offense. 18 U.S.C. § 16 (Supp.1985).

The parties agree that only subsection (b) could apply in the instant case. Because section 16(b) has been in effect for little over a half year, however, there is a paucity of law construing it. In light of this, we must rely heavily not only upon section 16(b)'s plain language and the few cases construing it, but also upon the statute's legislative history and upon accepted rules of statutory construction. The following four sections address these various sources of guidance in order.

### A. *Statute's Plain Language*

The place to start in construing a statute is, of course, its plain language. Although section 16(b)'s language is far from clear, we feel that it does lend support to defendant's view that possession with intent to distribute narcotics is not a crime of violence as that term is defined.

Section 16(b) defines a crime of violence as a felony that *by its nature* involves a substantial risk that physical force may be used against the person or property of another.

The government asserts essentially that the possession with intent to distribute narcotics is a dangerous business and, therefore, meets section 16(b)'s criteria. In support, the government cites a recent decision from within this circuit, *United States v. Rivera,* No. SS 85 Cr. 33 (JFK) (S.D.N.Y. May 6, 1985). *Rivera's* reasoning is that because firearms are oftentimes associated with section 841(a) offenses, involving the possession with intent to distribute narcotics, such offenses involve a substantial risk that physical force will be used against the person or property of another. *Id.,* slip op. at 3–4.

However, even assuming that firearms and narcotics distribution are a common combination, that does not mean that narcotics distribution *by its nature* involves such a risk. Certainly cocaine is distributed oftentimes outside of the presence of firearms. Indeed, it might be sold, or even given, from one friend to another. And yet under the view presented by *Rivera,* and advocated by the government, this court would have to consider any transfer of a narcotic from one friend to another to be a crime of violence.[3] This view seems clearly beyond what Congress, in adding to the words of the statute the phrase "by its nature," must have intended. Accordingly, we decline to adopt it as the view of this court.

### B. *Case Law*

As mentioned above, because section 924(c), *as amended,* and section 16(b) are of such recent origin, there are few cases interpreting them. This court is aware of only two interpreting decisions: the *Rivera* decision, *supra,* and a recent Second Circuit decision, *United States v. Chimurenga,* 760 F.2d 400 (2d Cir.1985).[4] *Rivera,* as mentioned above, held that section 841(a) violations do constitute crimes of violence. We appreciate the reasoning of *Rivera,* but decline to follow it for the reasons discussed above. Following *Chimurenga,* as

---

**3.** Although it is unclear, it seems that *Rivera* and the government might be saying merely that the distribution of narcotics is a crime of violence *when* it is performed in conjunction with the use or possession of a firearm. While this might be true, viewing the issue in this manner seems at odds with the plain language of § 924(c), which limits its application to instances where a person uses or carries a firearm *"during and in relation to* any crime of violence," 18 U.S.C. § 924(c) (emphasis added), implying that the "crime of violence" must be considered as an act separate and distinct from the use or carrying of the firearm.

Although we note at this time that we reject such an interpretation of § 924(c), we postpone further elaboration on our rationale until Section D, *infra,* since part of that rationale is based on legislative history and rules of statutory construction, both of which will be discussed below.

**4.** A third decision, *United States v. Hazzard,* 598 F.Supp. 1442 (N.D.Ill.1984), has applied these statutes, but since the underlying offenses in that case—which included armed robbery and rape—were so clearly within § 16's definition of a crime of violence, there was no need for the court to interpret the statutes.

we must, we are persuaded that section 841(a) offenses may not be held to constitute crimes of violence by their nature.

The defendant in *Chimurenga* was alleged to have violated section 924(c) by using or carrying a firearm during and in relation to the crime of conspiring to commit armed robbery. The issue in the case, therefore, was whether a conspiracy to commit armed robbery is a "crime of violence." The court held that it was.

There was no dispute in *Chimurenga* that the commission of armed robbery is itself a crime of violence. It falls squarely within section 16(a)'s definition of offenses that have as an element the use or threatened use of physical force against the person of another.[5] *Chimurenga*'s point is that a *conspiracy* to commit a crime of violence may itself be a crime of violence, the rationale being that the conspiracy increases the probability of the underlying crime being committed. Thus, the court reasoned, by its nature the conspiracy itself creates a substantial risk that physical force will be used against the person of another.

With this we do not disagree. In this case, however, the underlying offense is not a conspiracy to commit armed robbery, but the possession with intent to distribute narcotics, and the reasoning employed by *Chimurenga* in reaching its conclusion indicates to us that the latter offense is not a crime of violence.

*Chimurenga* notes that the legislative history defining a crime of violence uses burglary as an example of a felony that *"by its nature"* involves the required substantial risk. *Id.* at 404, *quoting* S.Rep. No. 225, 98th Cong., 1st Sess. 307, *reprinted in* 1984 U.S.Code Cong. & Ad.News,

3182, 3486–87 (hereinafter, S.Rep. No. 225) (emphasis added by Second Circuit). In emphasizing the words, "by its nature," the Second Circuit indicated the importance it attached to those words. The court provided two reasons why the crime of burglary involved such a risk by its very nature: first, that "[i]n the course of committing a burglary, there is, of course, the violence against the property;" and second, that there is "the additional risk that one who may surprise the burglar will be harmed." *Id.*, at 404.

Neither of those criteria are present in the instant case. The crime of possession with intent to distribute narcotics involves no threat of violence against property.[6] Second, it does not involve any element of surprise. Unlike burglary or the commission of armed robbery, possession with intent to distribute narcotics generally involves no unwilling parties and, hence, no inherent risk of injury to the person or property of another which might occur through surprising a crime victim. Thus, if *Chimurenga* tells us anything, it is that the offense at issue in the instant case does not constitute a crime of violence.

Other legislative history relied upon by *Chimurenga*, discussed in the next section, further leads us to believe that this offense should not be considered a crime of violence.

## C. *Legislative History*

Evidence in the legislative history that Congress did not intend section 841(a) offenses to be considered crimes of violence is found in S.Rep. No. 307, 97th Cong., 1st Sess., 888–89 & n. 43 (1981) (hereafter,

---

**5.** Although the statute directly involved in *Chimurenga* was not § 924(c), but § 3142(f)(1)(A), since the issue at hand was the defendant's detention pending trial, the operative definition of a crime of violence under § 3142, set forth in 18 U.S.C. § 3156(a)(4), is virtually identical to § 16, as was specifically pointed out by the Second Circuit. *Chimurenga*, at 404. Therefore, *Chimurenga* is sound authority for the interpretation of § 16.

**6.** It might be asserted that, since the ingestion of narcotics presents risks of injury to the human body, this meets § 16(b)'s criteria. Such a reading, while not completely void of rationale, is simply an insufficient basis—particularly when considered in light of the statute's legislative history and after rules of statutory construction are applied—upon which to convict and sentence someone under § 924(c).

S.Rep. No. 307).[7] The significance of this portion of the history is the light it sheds on the way in which the drafters believed section 924(c) as amended would *narrow* the scope of its prior version.

The drafters, in stating that section 924(c) would no longer apply to non-violent felonies, maintained that this change would have little practical effect since the former version was "not frequently utilized in situations in which the associated offense is not a 'crime of violence' as defined herein.[43]" Footnote 43 then cites two *exceptions* to this rule, both of which, the Report points out, involved the possession of narcotics with intent to distribute as the associated offense, *id.* at 889 & n. 43, *citing United States v. Bower*, 575 F.2d 499 (5th Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978), and *United States v. Dixon*, 558 F.2d 919 (9th Cir.), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1977). This is a further indication that the drafters were not considering such an offense a crime of violence. Otherwise, they would not have considered possession with intent to distribute controlled substances to be an exception to their statement that the former version of section 924(c) was rarely used where the associated offense was not a crime of violence.

The government argues that such an interpretation misses the mark. In support, it points out that *Bower* and *Dixon* involved the *carrying*, as opposed to the *use*, of a firearm during the underlying offense. The government readily admits that mere possession of a firearm would be excluded from the current section 924(c)'s coverage, but asserts that use cannot be.

Such an analysis, however, appears to be squarely at odds with the plain language of the new statute, which proscribes the use *or* carrying of a firearm during and in relation to a violent crime. As touched on above, and further discussed below, we believe that the court must consider the *underlying* offense of possession with intent to distribute narcotics itself, not the totality of the circumstances which might incidently include the use or carrying of a firearm. Because of this, and because section 924(c) makes no distinction between using or carrying a firearm during the associated offense, we see no reason to distinguish between these two acts as the government would have us do.

In sum, we hold that footnote 43 of the Senate Report—in citing section 841(a) offenses as an exception to the rule that the former version of section 924(c) was rarely used in conjunction with non-violent offenses—demonstrates that the drafters did not believe that section 841(a) offenses were crimes of violence and did not intend for the carrying or use of a firearm during the commission of a section 841(a) violation to be prosecutable under the new version.

### D. *Statutory Construction*

#### 1. *Subtitles*

■ Although the title or subtitle of an act cannot enlarge or control the words of the act, it may be helpful in interpreting ambiguities within the act's text. *See Mohegan Tribe v. Connecticut*, 638 F.2d 612, 620–21 (2d Cir.1980), *cert. denied*, 452 U.S. 968, 101 S.Ct. 3124, 69 L.Ed.2d 981 (1981). The CCCA, of which sections 924(c) and 16 are a part, is broken down into twenty-three chapters, with Chapter X labelled "Miscellaneous Violent Crime Amendments" and Title XI labelled "Serious Non-violent Offenses." Possession with intent to distribute narcotics is listed under neither title, but a comparison of those crimes listed as violent with those listed as non-violent reveals that section 841(a) offenses, if listed, would fall in the latter category.

Chapter X includes crimes such as murder for hire, use of armor-piercing bullets, kidnaping of federal officials, maiming, involuntary sodomy, destruction of motor vehicles or energy facilities, assault upon fed-

---

**7.** Footnote 42 to that Report sets out the definition of "crime of violence" with which the Senate was working at that time. The definition is identical to that of § 16, showing that comments contained in the Report are directly applicable to § 16.

eral officials, arson, and pharmacy robbery and burglary. As pointed out by the defendant, the operative words in these violent crimes are "threaten," "murder," "kidnap," "maim" and "assault." Examples of crimes listed under Chapter XI, on the other hand, include warning the subject of a search, receipt or sale of stolen bank property, and the providing or possession of contraband in a federal penitentiary. The operative language in crimes listed under the subtitle of nonviolent crimes are "receipt," "sale," "possess" and "contraband." Clearly the violation of section 841(a) would fall more readily into that category than in the former.

In support of this view, defendant points out that the nonviolent offense of providing or possession of contraband in prison, section 1109 of the CCCA, now codified at 18 U.S.C. § 1791, includes the providing or possession of firearms, narcotics or money. It is hard to imagine how Congress would consider a civilian's possession with intent to distribute narcotics to be a crime of violence when it does not so consider the possession of firearms, narcotics or money by an inmate in a federal penitentiary.

### 2. *Related Statutes Using the Term, "Crime of Violence."*

■ The resolution of questions regarding the interpretation of a particular statute may be aided by construing that statute together with other statutes which share the same general purpose or deal with the same general subject as the statute under consideration. *United States v. Becker,* 461 F.2d 230, 232 (2d Cir.1972), *cert. denied,* 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208 (1974); *Ram v. Blum,* 533 F.Supp. 933, 947 (S.D.N.Y.1982). This doctrine includes penal statutes, *Becker, supra,* and thus requires that this court examine other related statutes that use the term "crime of violence," in order to understand better the term's meaning within section 924(c).

At least three other provisions within the CCCA use the term "crime of violence" in a manner that clearly distinguishes such crimes from section 841(a) offenses.

The first is section 203(a), codified at 18 U.S.C. 3142(f), pertaining to the release or detention of a defendant pending trial. Subsection (f) provides that a detention hearing must be held in a case

(1) upon motion of the attorney for the Government, that involves—

(A) a crime of violence;

. . . . .

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substance Act (21 U.S.C. 801 et seq) ...;

(D) ...; *or*

(2) Upon motion of the attorney for the Government ... that involves

(A) a serious risk that the person will flee; ....

*Id.* (emphasis added).

The second provision is section 217(a), now codified at 28 U.S.C. 994(h), involving sentencing reforms, which states that

[t]he Commission shall assure that the guidelines will specify a sentence to a term of imprisonment at or near the maximum ... [where] the defendant

\* \* \* \* \* \*

(1) has been convicted of a felony that is

(A) a crime of violence; *or*

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)....

*Id.* (emphasis added).

Finally, section 1202 of the CCCA, codified at 18 U.S.C. § 5038(d), when describing use of juvenile records, states that

[w]henever a juvenile is found guilty of committing an act which if committed by an adult would be a felony that is a crime of violence *or* an offense described in section 841 ....

*Id.* (emphasis added).

In each of these sections, "crime of violence" and section 841(a) drug offenses are separated by the word "or," strongly indicating that such drug offenses are not

crimes of violence.[8] As stated by the Supreme Court, "Canons of construction indicate that terms connected in the disjunctive in this manner [should] be given separate meanings." *Garcia v. United States,* —— U.S. ——, ——, 105 S.Ct. 479, 482, 63 L.Ed.2d 472 (1984) *citing, FCC v. Pacifica Foundation,* 438 U.S. 726, 739–40, 98 S.Ct. 3026, 3035, 57 L.Ed.2d 1073 (1978). Accordingly, we must presume that Congress did not intend that section 841(a) offenses be considered crimes of violence under the CCCA.[9]

Further indication that section 841 violations are not crimes of violence is found at 28 U.S.C. § 2901(c), which defines the term "crime of violence" as it is used in Chapter 175 of Title 28, entitled "Civil Commitment and Rehabilitation of Narcotic Addicts." Section 2901(b) provides that the term

> "[c]rime of violence" includes voluntary manslaughter, murder, rape, mayhem, kidnaping, robbery, burglary or housebreaking in the nighttime, extortion accompanied by threats of violence, assault with a deadly weapon or assault with intent to commit any offense punishable by imprisonment for more than one year, arson punishable as a felony, or an attempt or conspiracy to commit any of the foregoing offenses.

*Id.*

The significance of this provision must be somewhat discounted due to the fact that it was not passed as part of the CCCA. Also, it clearly has a more stringent definition of a crime of violence than does section 16, as can be seen, for example, from its exclusion of the offense of daytime burgla-

ries. *Compare id. with* S.Rep. No. 225, at 307 (citing burglary as example of section 16 violation). Nevertheless, the degree of violence involved in the crimes listed in section 2901(b), together with the absence of the crime of possession with intent to distribute narcotics—particularly significant in light of the fact that Chapter 175 pertains to the civil commitment and rehabilitation of narcotic addicts—does lend some additional support to the notion that section 841(a) violations do not constitute crimes of violence.

In sum, the CCCA's use of the word "or" in three places to separate the term "crime of violence" from section 841(a) offenses, together with the severity of the crimes listed under 28 U.S.C. § 2901(b)'s definition of the term "crime of violence"—and the absence of section 841(a) offenses within that definition—indicate strongly that section 841(a) offenses do not constitute crimes of violence under section 16.

### 3. *Strict Construction of Penal Statutes*

 Where there is ambiguity in a criminal statute, that ambiguity must be resolved in favor of the defendant. *United States v. Margiotta,* 688 F.2d 108, 120–21 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). Of course, such a rule is to be used only when there is uncertainty about the statute's meaning, and is not to be used in complete disregard of the legislature's purpose. *Perrin v. United States,* 444 U.S. 37, 49 n. 13, 100 S.Ct. 311, 317 n. 13, 62 L.Ed.2d 199 (1979). Nevertheless, where there is ambi-

---

**8.** *See also* 18 U.S.C. § 3142(g)(1), also part of the CCCA, which requires that judicial officers, in determining whether to detain a defendant pending trial, consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence *or* involves a narcotic drug." *Id.* (emphasis added).

**9.** It might be argued that, although § 841(a) violations are not considered crimes of violence, the fact that they are often mentioned in statutes alongside crimes of violence indicates that they are considered to be equally serious, and thus that the use of firearms in conjunction with them should be construed as within § 924(c)'s

ambit. Such a holding, however, is precluded by *Yates v. United States,* 354 U.S. 298, 305, 77 S.Ct. 1064, 1069, 1 L.Ed.2d 1356 (1957), wherein the Court set forth the following doctrine:

> It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of a kindred character, with those which are enumerated.

*Id., quoting United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95–96, 5 L.Ed. 37 (1820).

guity, the rule must be applied. This policy embodies "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." H. Friendly, Mr. Justice Frankfurter and The Reading of Statutes, in Benchmarks 196, 209 (1967), *quoted in United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

In light of the plain language of the statute, the case law construing it, the legislative history behind it and the rules of statutory construction which must be applied to it, we have little, if any, doubt that the crime of possession with intent to distribute narcotics is not, in itself, a crime of violence.

The government argues, however, that the court must consider whether this offense is a crime of violence *when it is done in conjunction with the use or carrying of a firearm*. In effect, the government is arguing that section 924(c)—in proscribing the use or carrying of a firearm "during and in relation to a crime of violence"—would include within its reach not only offenses such as murder, rape or burglary, which present a substantial risk of injury to the person or property of another regardless of whether a firearm is used or possessed in relation to the offense, but also those offenses which present such a risk *only when* they are done in conjunction with the use or possession of a firearm. Such an interpretation would be tantamount to dividing section 841(a) offenses into two separate types: those which are conducted in conjunction with the use or possession of a firearm—and for that reason alone become crimes of violence—and those which are not so conducted and which do not present a substantial risk of injury for any other reason. Although we do not find such reasoning to be completely void of logic, we decline to follow it for several reasons.

First, there is simply no indication that Congress intended associated offenses to be divided in this manner. Section 16(b), in defining crimes of violence, speaks of crimes that *by their nature* involve a sub-

stantial risk of harm, not crimes which involve such a risk when conducted in a particular manner. This indicates to us that associated offenses falling under a particular provision, such as section 841(a), must be considered as a group, and not individually. Because not all section 841(a) offenses involve a substantial risk of harm, we hold that no such offense may be considered a crime which, by its nature, involves such a risk.

The second reason for rejecting the government's interpretation is that it would make section 924(c) extend to virtually every felony, despite a clear intent on Congress' part that the statute not do so. We can think of no felony, nor has counsel pointed us to any, which would not present a substantial risk of injury when a firearm is used or carried during *and in relation to* that crime. When a firearm is carried or used in relation to a crime—either to use, threaten, provide protection or for whatever reason—that crime by its nature presents a substantial risk of injury. In other words, any crime when viewed in its entirety becomes a crime of violence when a firearm's use or possession is related to that crime. Section 924(c)'s clear intent that it apply only to certain types of crimes would be meaningless under such an interpretation. *See also* S.Rep. No. 307, *supra*, at 888–89 ("[S]ome narrowing [of the former version of § 924(c) ] is caused by limiting the offenses with which the display, use or possession of a firearm must be associated to crimes of violence ..., and by the requirement that the display, use, or possession be 'in relation to' such underlying offense."):

Third, the legislative history indicates that we should look only to the underlying crime itself. For example, the section quoted in the parenthetical above provides that the use of the firearm must be *associated* with a crime of violence and that the use or possession must be *in relation to* such *underlying* offense. *Id*. This indicates to us that the related offense must be analyzed on its own to determine whether it is a crime of violence.

Another indication from the legislative history is footnote 43 to the Report, discussed *supra,* which specifically mentions possession with intent to distribute narcotics as an example of a nonviolent crime to which the former version of section 924(c) had applied but to which the new version would not apply. We interpret this to mean that the possession with intent to distribute narcotics must be considered by itself—and that when that is done a conclusion that the offense is nonviolent is directed—or that such possession must be considered a nonviolent offense even when it is done in conjunction with the use or possession of a firearm. We believe that the former interpretation is more logical. Either way, however, the footnote and its accompanying text directly support a finding that section 924(c) is not applicable to offenses committed under 18 U.S.C. § 841(a).

In sum, we believe that Congress intended the courts to consider the underlying offense by itself in determining whether it is a crime of violence, not whether it becomes so when the offender uses or carries a firearm during and in relation to it. To the extent that any doubt could remain on this issue, we must follow the doctrine that ambiguity within a statute must be construed in favor of a defendant.

### Conclusion

In this matter we much prefer the position espoused by the government with respect to the use or carrying of firearms in connection with narcotics transactions. If this is to become the governmental policy, however, then Congress, not this court, must be the body which creates it.

■ In light of the statute's plain language, the case law construing it, the legislative history behind it and the rules of construction which must be applied to it, we have no alternative but to hold that the underlying offense with which the defendant is charged, possession with intent to distribute narcotics, does not constitute a crime of violence. Accordingly, defend-ant's motion to dismiss Count 13 must be GRANTED.

At the hearing held on February 22, 1985, the court deferred acceptance of the plea agreement which had been reached by the parties to a date subsequent to the court's review of the presentence report to be prepared by the probation officer assigned to the case. The probation officer is now instructed to proceed forthwith with a presentence investigation and the preparation of a presentence report pursuant to Rule 32(c) Fed.R.Crim.P. The defendant is directed to file a written consent with the court authorizing the court to inspect the presentence report prior to accepting the plea agreement. If the plea agreement is accepted, a date for sentencing of the defendant will be set by the court. If the plea agreement is not accepted, the court will permit the defendant to withdraw his plea of guilty to Count 1 of the indictment and the case will proceed as though no plea agreement had been reached by the parties and no guilty plea accepted by the court.