**UNITED STATES of America, Appellee,**

v.

**David Richard WELLS, Appellant.**

**No. 85–1407.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1985.

Decided Sept. 19, 1985.

Patricia M. Hulting, Des Moines, Iowa, for appellant.

Joseph S. Beck, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

PER CURIAM.

David Richard Wells appeals from his conviction by a jury for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and for distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(A).[1] The appellant contends that the trial court erred in refusing to instruct the jury on the defense of coercion. We affirm.

On December 19, 1984 appellant and his codefendant, Billy Joe Worley, were arrested for selling twelve ounces of cocaine to undercover government agents for $25,000.00. The relevant events leading up to the arrest began on the evening of December 18, 1984 when Wells was at the home of Worley, whom Wells had known from past experience to be a drug dealer. Wells was dependent on Worley for a ride home, and the two soon left the house in Worley's car. Instead of proceeding to Wells' house, Worley drove to the house of another drug dealer known as "Dad."

Upon arriving at "Dad's," Wells was introduced and Worley informed "Dad" that Wells was from Oskaloosa, Iowa and had a child named Harley. Worley and "Dad" then proceeded to discuss several violent crimes including car and motorcycle bombings. Wells was asked to participate in the collection of some debts by illegal means, and he promptly refused to do so. "Dad" and Worley then prepared the cocaine that was to be sold to the agents that night, and Wells was given a gun and instructed to carry it in his beltline. Wells did not refuse to carry the gun.

Wells now knew that a drug deal was going to take place. He received a small amount of cocaine and $25.00 from Worley for his part in the deal, and the two left "Dad's" for the King Lear Motel in Oskaloosa. They stopped at a gas station in Ottumwa and Wells was able to go into the station alone while Worley made telephone calls from a booth outside. They then proceeded to the motel, and Wells was told to wait outside in the car until he was signaled. Worley entered a room and after a short time reappeared and signaled to Wells. Wells then carried the cocaine to the room, and he and Worley were promptly arrested by the agents.

At trial, Wells contended that the totality of the circumstances created in his mind an immediate threat of death or serious bodily harm against him and his family, and that the threat prevented him from escaping and avoiding participation in the crime on the two occasions that he had the opportunity to do so. He therefore gave notice of his intent to rely on the defense of coercion and he requested that the jury be instructed on the defense. The trial court, after careful consideration of the evidence and caselaw, denied this request.

■ The test relied on by this court in dealing with the criminal defense of coercion is stated as follows:

> Coercion which will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion and is not entitled to an instruction submitting that question to the jury.

*Shannon v. United States,* 76 F.2d 490, 493 (10th Cir.1935); *see also United States v. Saettele,* 585 F.2d 307, 309 n. 2 (8th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. May,* 727 F.2d 764, 765 (8th Cir.1984).

The *Shannon* test as applied by this court has two elements, both of which must be supported by sufficient evidence introduced by the defendant in order to warrant an instruction on coercion. First, there must be a threat of immediate death or serious bodily harm which leads the defendant to commit the crime in order to avoid such harm. Second, the defendant must not have a reasonable opportunity to withdraw from the crime or escape and avoid the threatened harm. *United States v. Campbell,* 609 F.2d 922, 924 (8th Cir.

---

**1.** The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa, sentenced Wells to concurrent eighteen-month terms on each count and a special parole term of three years.

1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980).

 We concur with the trial court's careful application of the above stated test to the relevant facts of this case. No overt threat was ever made against Wells or his family. Instead, the threat that he perceived was precipitated by the totality of the circumstances. While Wells may have been justified in being afraid of Worley and "Dad," the evidence does not support his contention that he acted under a threat of immediate death or serious bodily harm if he failed to cooperate. Wells testified that he did not refuse to take the gun that was offered to him because he was afraid to refuse anything. Earlier, however, he was not afraid to refuse to take part in the collection of debts by illegal means. In light of this fact, his fear to refuse to carry the gun or take part in the drug deal is questionable at best.

The threat that was perceived by Wells also lacked immediacy. From a review of the record, it is apparent that he feared future, and not immediate, harm to himself or his family if he failed to cooperate. " '[A] veiled threat of future unspecified harm' will not satisfy this requirement." *United States v. Contento-Pachon,* 723 F.2d 691, 694 (9th Cir.1984).

Finally, Wells had two clear chances to escape from participation in the drug deal and avoid all immediate harm. One of these chances occurred when he went into a gas station alone while Worley made telephone calls in a booth outside, and the other occurred at the King Lear Motel when he was left in the car alone for several minutes. Wells admits that he had these two chances, but he contends that the threat against his family prevented him from escaping. Once again, the existence of a threat and its immediacy are simply not supported by the record.

Wells refers us to *Contento-Pachon, supra,* where the Ninth Circuit reversed a trial court decision not to instruct the jury on the defense of coercion. He contends that the facts of that case are similar and that the reversal in that case was based on evidence that was less substantial than the evidence in the present case. We must disagree. Contento-Pachon presented evidence that he and his family were directly and overtly threatened with immediate and specific harm twice before he agreed to participate in the crime. Wells has only presented evidence of a direct and specific threat that occurred after his arrest, and he has admitted that no actual threat was made prior to that time. Thus, the evidence presented by Wells in the present case falls far short of that presented by the defendant in *Contento-Pachon, supra.*

This court does not in any way intend to make the defense of coercion impossible, but neither do we intend to make the defense so readily obtainable as to be subject to abuse. Since the evidence presented by Wells simply is not sufficient to satisfy the time-honored *Shannon* test, the decision of the trial judge not to instruct the jury on the defense of coercion is approved, and the conviction of appellant is affirmed.