**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carlos Bienuenido CRUZ, Roberto Cruz, Stephen Cruz, Teresa Irwin, Phillip Warren Jones, Dave Thomas, and Arthur Liggins Strong, Defendants-Appellants.**

No. 85–8808.

United States Court of Appeals,
Eleventh Circuit.

Dec. 16, 1986.

As Amended Dec. 29, 1986.

Wilmer Parker III, Asst. U.S. Atty., Allen H. Moye, Sp. Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Jay L. Strongwater, court-appointed, Atlanta, Ga., for Carlos Cruz.

Eugene A. Medori, Jr., court-appointed, Decatur, Ga., for Roberto Cruz.

Gil Howard, court-appointed, Atlanta, Ga., for Stephen Cruz.

R.C. Cougill, court-appointed, Lilburn, Ga., for Teresa Irwin.

Thomas R. Moran, court-appointed, Atlanta, Ga., for Phillip Warren Jones.

Michael R. Hauptman, court-appointed, Atlanta, Ga., for Dave Thomas.

Daniel Kane, Atlanta, Ga., for Arthur Liggins Strong.

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

ANDERSON, Circuit Judge:

This case involves a large conspiracy to distribute cocaine in the Southeastern United States. A grand jury indictment returned on April 15, 1985 charged seventeen defendants with eighteen counts of various narcotic and gun offenses.

Following a jury trial appellant Carlos Cruz, the alleged ringleader of the conspiracy, was found guilty of twelve counts of possessing cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), one count of conspiring with others to possess cocaine with the intent to distribute it in violation of 21 U.S.C. § 846, one count of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, and one count of carrying or using a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c).[1] Appellant Roberto Cruz, Carlos' cousin, was found guilty of conspiring to possess cocaine with intent to distribute, using a firearm during the commission of a crime of violence, and one count of possessing cocaine with intent to distribute. Appellant Stephen Cruz, Carlos' son, was found guilty only of conspiring to possess cocaine with intent to distribute. Appellant Teresa Irwin, Carlos' girlfriend, was found guilty on the conspiracy and firearms counts.[2] Appellant Phillip Warren Jones was found guilty of two possession counts as well as the conspiracy count. Appellant Dave Thomas was found guilty of the conspiracy count. Appellant Arthur Liggins Strong was found guilty of two counts of possessing cocaine and one count of conspiring to possess cocaine.[3] The evidence at trial tended to show that Jones, Thomas and Strong were all distributors in Carlos Cruz' cocaine network.

Following their convictions, each of the appellants was sentenced as follows: Carlos Cruz received a thirty-five year sentence for engaging in a continuing criminal enterprise. In addition he received fifteen-year concurrent sentences for his conspiracy to possess cocaine and for each of the twelve counts of possessing cocaine for which he was convicted. He also received a five-year consecutive sentence for violation of the firearms statute. Roberto Cruz received a twelve-year sentence for his participation in the conspiracy and a twelve-year concurrent sentence for his possession of cocaine. He also received a five-year consecutive sentence for his conviction on the firearms count. Stephen Cruz received a three-year sentence for conspiring to possess cocaine with intent to distribute. Teresa Irwin received a three-year sentence for her use of a firearm in connection with a crime of violence. She also received a three-year sentence for her participation in the conspiracy; however, that sentence was suspended and she was placed on five years probation. Appellants Strong and Jones were each sentenced to fifteen years for their participation in the conspiracy to distribute cocaine and both received concurrent fifteen-year sentences for each of their possession convictions. Appellant Thomas received a twelve-year sentence for participating in the conspiracy.

On appeal, in a dazzling array of combinations, appellants raise the following challenges to their convictions: (1) that their convictions for carrying a firearm during the commission of a crime of violence are, as a matter of law, improper because trafficking in drugs is not inherently a crime of violence; (2) that the provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042, deprive the federal courts of jurisdiction over Stephen, or, alternatively, that they require reversal of Stephen's conviction; (3) that the testimony of GBI Agent Theodore Jackson was hearsay, and consequently inadmissible; (4) that Carlos'

---

**1.** Appellant Carlos Cruz was found not guilty of two counts of cocaine possession in violation of 21 U.S.C. § 841(a)(1).

**2.** The record reflects some confusion as to whether appellant's last name is "Irwin" or "Irvin." For the purposes of this opinion, we use Irwin—the name under which appellant was indicted.

**3.** Appellant Strong was found not guilty of one count of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

sentences on the conspiracy and possession counts merge, as a matter of law, with his conviction for organizing a continuing criminal enterprise, and consequently must be vacated; (5) that the trial court improperly denied Carlos' midtrial motion for a psychiatric examination to determine his competency; (6) that the government was improperly permitted to introduce into evidence the plea agreements of its cooperating witnesses during direct examination thereby impermissibly bolstering their testimony before it was attacked; (7) that Roberto and Irwin's trials should have been severed; (8) that the trial court improperly received partial verdicts from the jury prior to the completion of their deliberations; (9) that the district court failed to give a requested instruction on withdrawal from a conspiracy; (10) that the trial court improperly denied appellant Jones' midtrial motion to suppress certain wiretap evidence; (11) that the government's proof at trial was flawed because it varied in two respects from the indictment—first in proving a multiple conspiracy rather than a single one and second, in proving a date of possession for one of the counts which varied by one month from the date alleged in the indictment; (12) that the prosecutor was guilty of misconduct in his closing argument; (13) that the trial court erred by ruling in limine that the past convictions of appellants Roberto and Strong could be used to impeach their testimony should they take the stand; (14) that the trial court made various errors in its evidentiary rulings which were either prejudicial to the defendants or in violation of Fed.R.Evid. 404(b); (15) that appellant Roberto was not advised of his *Miranda* rights; (16) that evidence obtained during the stop of a car in Henry County was improperly admitted because the stop was made without probable cause; (17) that with respect to appellant Irwin the trial court did not make findings required by the Youth Corrections Act, 18 U.S.C. § 5010(d) (1982) (repealed

1984); and (18) that the evidence was insufficient to support the verdicts reached by the jury.

For the reasons set out below we affirm appellants' convictions in all respects but two. Carlos' conviction on the conspiracy count merges, as a matter of law, with his conviction for organizing a continuing criminal enterprise. Hence, his fifteen-year concurrent sentence on the conspiracy count must be vacated. In addition, because drug trafficking is not a crime of violence, Carlos', Roberto's and Irwin's convictions for violating 18 U.S.C. § 924(c) must be reversed.

## I. DRUG TRAFFICKING AS A CRIME OF VIOLENCE

Appellants Carlos Cruz, Roberto Cruz and Teresa Irwin challenge their firearms convictions under 18 U.S.C. § 924(c). Section 924(c), as in effect at the time of appellants' indictment, provided that

Whoever, during and in relation to any crime of violence, ... uses or carries a firearm, shall, in addition to punishment provided for such crime of violence, be sentenced to imprisonment for five years.[4]

A crime of violence is separately defined to mean:

a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

Appellants challenge their convictions under § 924(c). They contend that the predicate crimes of which they have been convicted, organizing a continuing criminal

---

**4.** In May 1986, § 924(c) was amended by the Firearms Owners' Protection Act, Pub.L. No. 99–308, *reprinted in* 5 U.S.Code Cong. & Ad. News at 100 Stat. 449, 456–57 (July 1986). The law now provides for the imprisonment of those who use firearms in connection with a crime of violence or a "drug trafficking crime." *Id.*

enterprise, conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, are not felonies that, by their nature, involve a substantial risk of the use of physical force.[5]

Because we conclude that the language of the statute, its legislative history and other evidence of congressional intent are, at best, ambiguous as to whether drug trafficking offenses are crimes of violence, we adhere to the principle of lenity which requires the strict construction of penal statutes. We thus reverse appellants' firearms convictions.

### A. *Plain Language*

Section 16(b) defines a crime of violence as a felony that, *by its nature*, involves a substantial risk that violence *may* be used against people or property. On its face this language is ambiguous.

On the one hand, as appellants argue, there is the "by its nature" language of the statute. They contend that, by using the words "by its nature," Congress has made the determination that crimes of violence occur only when the predicate offense necessarily involves the use of force. If the predicate crime does not necessarily require the use of force, then it is not by its nature a crime of violence. Because the sale of drugs by an individual to his friend, relative, or even a stranger, is often a consensual transaction in which violence is not involved, the sale itself need not necessarily involve a substantial risk of physical force.

It is principally upon the basis of this argument that our sister courts have determined that drug trafficking is not a crime of violence. *See United States v. Diaz,* 778 F.2d 86 (2d Cir.1985); *United States v. Wells,* 623 F.Supp. 645 (S.D. Iowa), *aff'd,* 773 F.2d 230 (8th Cir.1985); *United States v. Bushey,* 617 F.Supp. 292 (D.Vt.1985); *United States v. Jernigan,* 612 F.Supp. 382 (E.D.N.C.1985). *But see United States v.*

*Rivera,* No. SS 85 Cr. 33 (JFK) (S.D.N.Y. May 7, 1985) [Available on WESTLAW, DCTU database]. We find this analysis inadequate.

To adopt this interpretation ignores other portions of the statutory language. The use of the terms "may" and "substantial risk" in this context is critical; it emphasizes Congress' determination that violence need not be a necessary ingredient of the underlying predicate offense. Rather the statute requires merely that the predicate crime create a substantial risk of the possible use of force. Moreover, if violence were a necessary ingredient under § 16(b), then § 16(a) would be redundant. Crimes of violence with force as an element of their commission are explicitly covered by § 16(a). There are few, if any, crimes which necessarily involve the use of force which do not have the use of force as an element of the crime. A proper statutory interpretation cannot give § 16(b) the exact same meaning as § 16(a).

The interpretation the government suggests, however, is equally implausible. It asks us to look at each offense on a case-by-case basis and determine whether or not it comes within the scope of § 16(b). Thus, it asks us to inquire whether the crime, as committed, actually created a substantial risk of harm. If it did, the government contends, it may be considered a crime of violence. But this interpretation gives no meaning to the term "by its nature." Had Congress intended the result the government urges it need not have used that phrase at all. It need only have defined a crime of violence as a felony which may create a substantial risk of harm. The definition Congress actually adopted, including the phrase "by its nature," prevents us from adopting a case-by-case analysis.

One other interpretation suggests itself for analysis. It might be argued that only large-scale drug conspiracies, involving

---

**5.** Drug trafficking crimes are clearly not crimes of violence within the meaning of 18 U.S.C. § 16(a). The use of physical force is not an element of the crime. Only possession and distribution are required.

large quantities of narcotics, are drug trafficking crimes which, by their nature, involve a substantial risk that force may be used. This interpretation would distinguish between the isolated consensual transfer of narcotics from one friend to another and the often violent transactions which accompany a large distribution network, such as the one involved in the instant case.

The problem with this interpretation is that it is also inconsistent with the "by its nature" language of the statute. This language implies that the generic, rather than the particular, nature of the predicate offense is determinative in defining a crime of violence. The substantive predicate offense involved is not the "large-scale" conspiracy to possess narcotics with intent to distribute, but merely the conspiracy to possess with intent to distribute.

Moreover, an interpretation such as the one suggested would have the unfortunate effect of bifurcating the statutory offense. Under that interpretation, there would be some conspiracies, such as those involving two small-scale student dealers, which would not support a separate § 924(c) firearms violation. Other conspiracies, such as the large-scale transactions involved in this case, would support a firearms conviction, notwithstanding the fact that both the large-scale and the small-scale conspiracy violate the exact same statutory prohibition against conspiracies to distribute narcotics. We cannot think that § 16(b) is a sufficiently explicit enunciation of congressional intent to bifurcate the statute in such manner.[6] Indeed, when Congress has intended to make the distinction between large and small-scale transactions, it has shown itself fully able to draw that distinction explicitly. *See* 28 U.S.C. § 994(i)(5) (requiring a substantial term of imprisonment for felonies involving "a substantial quantity of a controlled substance").

Thus, none of the plausible interpretations of the statutory language is satisfactory. Each demonstrates the contradictions inherent in the plain statutory language of § 16(b). We thus conclude the language of the statute is facially ambiguous.

B. *Legislative History*

The legislative history of § 924(c) only partially clarifies the meaning of the statute. To the extent that it has any certain import, the legislative history indicates that drug trafficking was not intended to fall within the definition of a crime of violence. At a minimum, however, the legislative history is itself ambiguous.

Prior to 1984, § 924(c) provided for the imprisonment of one who "uses a firearm to commit any felony." 18 U.S.C. § 924(c)(1) (1982). In 1984, as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1837, 2138–39, Congress revised that rule and provided that the firearm penalty should apply only to those who engaged in a crime of violence. In making this change, Congress recognized that it was limiting the types of crimes to which the additional firearms punishment applied. *See* S.Rep. No. 307, 97th Cong., 1st Sess., 888 (1981) (hereafter cited "S.Rep. No. 307") ("some narrowing is caused by limiting the offenses with which the display, use or possession of a firearm must be associated to crimes of violence rather than any felony").[7]

6. Moreover, were we to adopt such an interpretation it would have implications far beyond the instant case. We have no doubt, for example, that numbers running, though not inherently a violent offense, is often conducted on such a large scale that the incidence of violence is greatly increased by the large amounts of money involved. The same would be true of prostitution or any other crime in which organized crime is involved. Indeed, the case-by-case analysis or large-scale/small-scale distinction which we might apply could extend to cover all substantive crimes and offenses.

7. The legislative history in S.Rep. No. 307 related to a bill, S. 1630, which was the direct predecessor of the Comprehensive Crime Control Act of 1984. When it finally enacted the Comprehensive Crime Control Act, Congress retained the crime of violence definition that had previously been proposed in S. 1630 and referred for an interpretation of that provision to S.Rep. No. 307. *See* S.Rep. No. 225, 98th Cong., 1st Sess.

Moreover, in so limiting the application of § 924(c), the legislative history expressly referred to cases involving possession of narcotics with intent to distribute as cases involving crimes that were not crimes of violence. The Senate Report recognized that the crime of violence limitation was

> designed to refine the offense by confining it to its proper and practical boundaries as a means of deterring and punishing the employment of a firearm in relation to an offense that by its nature involves physical force or substantial risk thereof. This will not, in the Committee's judgment, produce any significant practical constraint on the scope of the offense since experience under [the earlier version of § 924(c)] indicates that the statute is not frequently utilized in situations in which the associated offense is not a 'crime of violence' as defined herein.[43]

---

[43] *But see United States v. Dixon,* 558 F.2d 919 (9th Cir.), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 764 (1977), and *United States v. Bower,* 575 F.2d 499 (5th Cir.1978) [*cert. denied,* 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978)], in which the courts sustained convictions under [the earlier version of § 924(c)] where the firearm was carried during the commission of a crime involving the possession of narcotics with intent to distribute.

S.Rep. No. 307 at 889 & n. 43.

Thus, the Senate Report noted that drug crimes were an exception under the earlier version of 924(c) because they were among the few nonviolent crimes to which the statute had been applied. Since the legislative history recognized that the new version of the statute did not preserve that exception, we might conclude that Congress expressed a clear intention that drug crimes were not to be crimes of violence under § 924(c).

307 n. 10 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News, 3182, 3486.

**8.** While statements concerning earlier statutes made by a subsequent legislature are not conclusive evidence of the meaning of the earlier statute, that later interpretation may be accorded some deference where subsequent legislative commentary accompanies enactment of an

This legislative history, however, is not conclusive. The two cases cited by the Senate as examples of offenses which would no longer be sufficient to form the predicate for a firearms conviction, *Dixon* and *Bower,* both involved the small-time retail distribution of narcotics. Neither defendant was charged with more than one count of possession with intent to distribute, *Dixon,* 558 F.2d at 921; *Bower,* 575 F.2d at 501, nor was either indicted with any codefendants. Most significantly, neither *Dixon* nor *Bower* involved a conspiracy charge. Each defendant operated solely on his own and, insofar as the opinion in each case indicates, neither was anything more than a small, retail distributor of narcotics. Thus, while the legislative history does tend to support the conclusion that some drug trafficking crimes were not intended to be crimes of violence, it does not conclusively establish that all drug trafficking crimes were intended to be excluded from the definition of a crime of violence.

Congress' recent revision of § 924(c) is equally unilluminating.[8] The statute now provides for the punishment of anyone who "during and in relation to any crime of violence or drug trafficking crime, ... uses or carries a firearm." 100 Stat. 457 (1986); *see also supra* n. 4. The explicit addition of drug trafficking crimes to the text of the statute might have two interpretations. It might simply be congressional action to place explicitly into the law that which courts have, incorrectly, thought was not there originally. Alternatively, it might indicate that Congress thought the application of § 924(c) to drug trafficking offenses was a new action designed to correct an omission in the earlier law.

Both interpretations find suport in the legislative history. *Compare* H.R.Rep. No. 495, 99th Cong., 2d Sess. 2 (1986),

amendment to the earlier law. *See Coke v. General Adjustment Bureau,* 640 F.2d 584, 594 (5th Cir.1981) (en banc); *see also Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1979); *May Department Stores Corp. v. Smith,* 572 F.2d 1275, 1278 (8th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134 (1978).

*reprinted in* 5 U.S.Code Cong. & Ad.News 1327, 1328 (July 1986) (the law "[p]rovides an important new weapon against narcotic traffickers by mandating that a person who uses or carries a firearm during and in relation to a drug trafficking crime shall be subject to a mandatory prison term of five years"), *and id.* at 27, 5 U.S.Code Cong. & Ad.News at 1353 ("This subsection was added ... to cover [the use or carrying of a firearm] during and in relation to drug trafficking crimes."), *and* 132 Cong.Rec.H. 1749 (April 10, 1986) (the revised law "extends ... stiff penalties to drug traffickers [who use a firearm]. I'm sure my colleagues will agree that including drug traffickers under this sentencing provision adds real strength to the law....") (statement of Rep. Mollohan) *with*, H.R.Rep. No. 495 at 17–18, 5 U.S.Code Cong. & Ad.News at 1343–44 ("The bill would provide that those who carry or use firearms in the commission of a Federal drug offense would be subject to the Act's mandatory penalties. This amendment would resolve the current uncertainty whether such crimes are crimes of violence and thus fall within the existing mandatory penalty provision.") (views of the Administration as set out in the House Report). Thus, the subsequent legislative history does not resolve the ambiguity inherent in the 1984 version of § 924(c).

## C. *Congressional Intent*

We may also attempt to glean congressional intent from an analysis of the statute as a whole. Here again our investigation gives no clear meaning to the term "crime of violence." Nonetheless, this analysis also tends to support the view that drug trafficking crimes were not intended to be crimes of violence. The term "crime of violence" was defined by provisions of the Comprehensive Crime Control Act. At least four provisions within the statute use the term "crime of violence" in a manner that distinguishes such crimes from narcotics offenses.

In 18 U.S.C. § 3142(f), pertaining to the release or detention of a defendant pending trial, the law provides that a detention hearing must be held in a case that involves "(1) ... (a) a crime of violence; ... [or] (c) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)."

Similarly, in 18 U.S.C. § 3142(g)(1), the statute lists factors which are to be considered in determining whether a defendant poses a danger to the community. These include "the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug." *Id.*

The provisions of 28 U.S.C. § 994(h) involve sentencing reform. The statute provides that "[t]he commission shall assure that the guidelines will specify a sentence to a term of imprisonment at or near the maximum [where] the defendant ... (1) has been convicted of a felony that is—(a) a crime of violence; or (b) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)."

The provisions of 18 U.S.C. § 5038(d) limit the use of juvenile records. It permits their disclosure, however, when "a juvenile is found guilty of committing an act which if committed by an adult would be a felony that is a crime of violence or an offense described in section 841... of Title 21."

Thus, in each of these sections of the Comprehensive Crime Control Act, "crimes of violence" are set in opposition to drug trafficking offenses. They are separated by the disjunctive word "or," strongly indicating that Congress construed the two to be separate and distinct. "Canons of construction indicate that terms connected in the disjunctive [should] be given separate meanings." *Garcia v. United States*, 469 U.S. 70, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).

However, this analysis is not conclusive. Two of the provisions considered, 18 U.S.C. § 5038(d) and 28 U.S.C. § 994(h), make the distinction only between a crime of violence and an offense under 21 U.S.C. § 841. Section 841 criminalizes possession with intent to distribute. Thus, these provisions, like

the legislative citation of *Dixon* and *Bower*, are facially silent as to any distinction between a crime of violence and the more serious drug trafficking offenses of conspiracy to possess with intent to distribute and engaging in a continuing criminal enterprise.

In a similar vein, the comparison involved in 18 U.S.C. § 3142(g)(1), between a crime of violence and one involving a narcotic drug, does not clarify the nature of the distinction between the two offenses. Congress might well have adopted language making such a distinction even if it had intended a crime of violence to include large-scale drug conspiracies. The language of § 3142(g)(1) would be necessary in order to insure that participation in a small-scale drug distribution scheme, or even the simple possession and personal use of narcotics would also be considered in determining whether or not a defendant posed a danger of violence to the community.

■ Thus, our analysis of the structure of the statute leaves us with only a single instance in which crimes of violence are set in direct opposition to the full range of drug trafficking crimes. *See* 18 U.S.C. § 3142(f). This provision standing by itself is not sufficient to allow us to conclude that Congress clearly intended to exclude drug trafficking crimes from the ambit of a crime of violence.

However, as this analysis makes clear, the most that can be said is that the structure of the statute does not eliminate all ambiguity as to congressional intent. As with the legislative history and the plain language, the structure of the statute certainly does not lead to the conclusion that Congress intended drug trafficking crimes to be *included* within the definition of a crime of violence. None of the standard tools of statutory construction can aid in our determination. We are left with ambiguity as to what Congress intended by its enactment of § 924(c) in 1984, although it must be acknowledged that the legislative history and the other provisions juxtaposing crimes of violence and drug crimes do provide some indication of a congressional intention that the term "crime of violence" not include narcotics offenses.

### D. The Strict Construction of Penal Statutes

■ We have previously held that, when there is an ambiguity in a criminal statute, that ambiguity must be resolved in favor of the defendant. *United States v. Kroesser,* 750 F.2d 833 (11th Cir.1985); *United States v. Rojas,* 671 F.2d 159 (5th Cir. Unit B 1982).[9] This rule of interpretation reflects the sentiment that in a free society men should not languish in prison unless the duly elected representatives of society have expressly and clearly required it. It thus serves the two-fold purpose of requiring legislatures to give fair warning of what conduct is prescribed and insuring that "legislatures and not courts ... define criminal activity." *See United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

This principle of lenity is " 'not an inexorable command to override common sense and evident statutory purpose.' " *Rojas,* 671 F.2d at 163 (quoting *United States v. Moore,* 423 U.S. 122, 145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333 (1975)). Indeed, the doctrine of lenity should not be invoked until a court "seiz[ing] everything from which aid can be derived, ... [is] left with an ambiguous statute." *United States v. Noe,* 634 F.2d 860, 862 (5th Cir.1981)[10] (quoting *Bass,* 404 U.S. at 347, 92 S.Ct. at 522), *cert.*

---

**9.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

**10.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

*denied,* 454 U.S. 876, 102 S.Ct. 355, 70 L.Ed.2d 186 (1981).

■ In the instant case, we deal with exactly such a situation. There is no evident statutory purpose. *Cf. Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (finding ambiguity in pre-1984 version of § 924(c)). We have plumbed every available tool of statutory construction and remain unable to develop a definitive interpretation of § 924(c). Because it is "a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment," *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), we are bound to limit the application of § 924(c). The ambiguous nature of the statute requires us to restrict its ambit. Consequently, we determine that drug trafficking crimes are not crimes of violence within the meaning of § 16(b). Thus, conviction of predicate drug trafficking offenses will not support a conviction under § 924(c).

E. *Case Law*

Our interpretation is supported by its conformity with the virtually uniform result reached by other courts, albeit by a different reasoning. These courts have concluded that drug trafficking offenses are not inherently crimes of violence. *See United States v. Diaz,* 778 F.2d 86 (2d Cir.1985); *United States v. Wells,* 623 F.Supp. 645 (S.D. Iowa), *aff'd,* 773 F.2d 230 (8th Cir.1985); *United States v. Bushey,* 617 F.Supp. 292 (D.Vt.1985); *United States v. Jernigan,* 612 F.Supp. 382 (E.D.N.C.

1985). *But see United States v. Rivera,* No. SS 85 Cr. 33 (JFK) (S.D.N.Y.1985) [Available on WESTLAW, DCTU database].

Of course, numerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic. *See United States v. Alvarez,* 755 F.2d 830 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985); *United States v. Montes-Cardenas,* 746 F.2d 771 (11th Cir. 1984); *United States v. Stewart,* 779 F.2d 538 (9th Cir.1985); *United States v. Grant,* 545 F.2d 1309 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). However, these cases were not rendered in the face of the statute and legislative history at issue here. Thus, while we may conclude that the violent use of firearms is the reasonably foreseeable consequence of a narcotics offense, sufficient to allow for co-conspirator liability under the *Pinkerton* doctrine, *see Alvarez, supra,* we are not at liberty to conclude that the link between guns and drugs is so overwhelming as to mandate a conclusion that drug crimes *by their nature* involve a substantial risk of violence, especially in light of the contrary indications in the legislative history and other provisions of the statute.[11]

■ In sum, the language of the statute, its legislative history, the structure of the statute as a whole, and the uniform interpretation of other courts, all counsel for one result. Given the principle of lenity

---

11. It might be argued that our interpretation leaves no room at all for the operation of § 16(b). If narcotics conspiracies are not by their nature likely to result in the substantial risk of violent harm, what crimes are by their nature crimes of violence that do not have as an element of the offense some violent act? Section 16(b) must have some application apart from those crimes included in § 16(a). The legislative history of the 1984 version of § 924(c) offers one example of such a crime; "offenses such as burglary in violation of a State law ... would be included ... inasmuch as such an offense would involve the substantial risk of physical force against another person or

against property." S.Rep. No. 225, 98th Cong., 2d Sess. 307 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3487. Another possible application of § 16(b) is suggested by *United States v. Chimurenga,* 760 F.2d 400 (2d Cir.1985), holding that conspiracy to commit armed robbery is encompassed by § 16(b). The only elements of the *Chimurenga* crime were an agreement and an overt act. Thus, violence was not an element of the crime, so that it was not covered by § 16(a). However, the crime, by its nature, created a substantial risk of violence. This would be true of any conspiracy to commit a crime of violence. Thus, our interpretation does not leave § 16(b) devoid of content.

which requires the strict construction of penal statutes, we conclude that engaging in a continuing criminal enterprise, conspiracy to distribute narcotics and possession with intent to distribute are not crimes of violence within the meaning of § 16(b). Consequently, appellants' convictions under § 924(c) must be vacated.[12]

## II. FEDERAL JUVENILE DELINQUENCY ACT

Appellant Stephen Cruz raises three issues regarding the application of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042. First, he contends that because he was a juvenile at the time he entered into the conspiracy and because there is insufficient evidence to prove that he continued to participate in the conspiracy after his eighteenth birthday, the federal courts are without jurisdiction to try him. Second, Stephen contends that, assuming *arguendo* the court has jurisdiction, the evidence of his pre-eighteen acts in furtherance of the conspiracy are inadmissible. His guilt, he contends, must be proved solely on the basis of his post-eighteen activity. Third, Stephen argues that even if evidence of his pre-eighteen acts were admissible to provide a context within which the jury could evaluate his post-eighteen activity, evidence of his pre-eighteen acts would not be admissible to prove his guilt in participating in the conspiracy. Because the trial court denied Stephen's motion to give a limiting instruction to the jury which would have prevented them from considering the evidence of his pre-eighteen activity as evidence of his guilt, Record on Appeal, vol. 7 at 295, vol. 26 at 3919, the jury was allowed to consider evidence of Stephen's actions as a minor as evidence of his guilt. All this, Stephen argues, is in violation of the provisions of the Federal Juvenile Delinquency Act.

There was ample evidence of Stephen's participation in the cocaine conspiracy prior to his eighteenth birthday. On several occasions he acted as a runner for his father, distributing cocaine of ounce to kilogram quantities. *See, e.g.*, Record on Appeal, vol. 7 at 276–77, 304–06, vol. 8 at 561–63, vol. 11 at 1143, 1184. The evidence of Stephen's participation in the conspiracy following his eighteenth birthday on August 15, 1984 is, however, more limited. The principal piece of such evidence is a recorded conversation between Stephen and Clarence Brantley, a member of the conspiracy and a cooperating government witness. In that conversation, Brantley told Stephen that the police had recently searched his house. In response Stephen said that his father had called him and told him to be careful as well. Stephen then told Brantley that if Brantley got a chance to come down to Miami they would talk and go "snapper fishing." Brantley testified that "snapper fishing" was a code word used to refer to trips to Miami to procure cocaine.

■ Unlike most federal offenses, conspiracy is a continuing crime. "The Juvenile Delinquency Act does not, of course, prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he is charged while still a minor...." *United States v. Spoone*, 741 F.2d 680, 687 (4th Cir.1984), *cert. denied*, 469 U.S. 1162, 105 S.Ct. 917, 83 L.Ed.2d 929 (1985); *see also* 18 U.S.C. § 5031 (defining an act of juvenile delinquency as a violation of a law of the United States committed by one under the age of 18). Consequently,

---

**12.** Our decision today does not preclude the conviction of drug traffickers for the crimes of possessing narcotics with intent to distribute, conspiracy to distribute, continuing criminal enterprise, and other substantive crimes. Appellants' convictions on such counts remain unaffected. Moreover, the applicability of our decision is limited. It will affect only those defendants indicted on firearms counts for drug trafficking between the effective date of the Com-

prehensive Crime Control Act in October 1984, and the passage of the Firearms Owners' Protection Act in May 1986. Prior to that 1984 date, the use of firearms in connection with any felony was punishable by an additional five years' imprisonment. After 1986, drug trafficking crimes are expressly included within the ambit of § 924(c). Thus, our ruling today applies only to those indictments handed down in a period of less than two years.

there can be no question that the district court had jurisdiction over the conspiracy prosecution against Stephen. The government presented evidence from which a jury could infer that Stephen's involvement in the conspiracy continued after he turned eighteen—namely, Brantley's testimony that subsequent to Stephen's eighteenth birthday Stephen invited him down to Miami to purchase cocaine. Having made this threshold demonstration of post-eighteen conspiracy activity, Stephen was properly within the jurisdiction of the district court.

Moreover, this understanding answers completely Stephen's contention that evidence of his pre-eighteen acts was inadmissible. At a minimum, the jury was entitled to assess the testimony regarding Stephen's post-eighteen activity in light of other evidence which tended to show that Stephen had known about the cocaine conspiracy from its inception. *See* Fed.R.Evid. 404(b); *Spoone,* 741 F.2d at 687. This leaves unresolved, however, the more difficult question of whether or not Stephen's acts as a minor may be used to establish his guilt.[13]

In *Spoone,* the trial court had instructed the jury that it could not consider the juvenile acts of a defendant as evidence of his guilt. This reassured the Fourth Circuit that the jury had not convicted the defendant because of his pre-eighteenth birthday activity. *Spoone,* 741 F.2d at 687. Thus, in dicta, the Fourth Circuit seemed to

conclude that the Federal Juvenile Delinquency Act would prohibit the conviction of a defendant on the basis, in whole or in part, of his actions while a minor. We respectfully disagree. We hold that once sufficient evidence has been introduced that would allow a jury to reasonably conclude that the defendant's participation in a conspiracy continued after his eighteenth birthday, then he may be tried as an adult. In his trial as an adult, only the strictures imposed by the Federal Rules of Evidence may limit the activities of the prosecutor.

There is nothing in the legislative history or structure of the Juvenile Delinquency Act which compels an opposite conclusion. Indeed, congressional passage of the amendments to the Federal Juvenile Delinquency Act as part of the Juvenile Justice and Delinquency Prevention Act of 1974, Pub.L. No. 93–415, 88 Stat. 1109, reflect a different consideration. The amendments were not made to modify the proceedings in adult court but, rather, "to guarantee certain basic rights to juveniles who come within Federal jurisdiction." 120 Cong. Rec. 25,162 (statement of Sen. Bayh); *see also* House Conf.Rep. No. 1298, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5283, 5334. Thus, none of the provisions of the act are applicable in a trial involving one who is not a juvenile and has not committed an act of juvenile delinquency. *See, e.g.,* 18 U.S.C. § 5031.[14]

---

**13.** We reach this question because our examination of the record reveals that the evidence of Stephen's conspiratorial acts as a minor was far greater than the evidence presented by the government of his acts after he had reached his majority. Because of this disparity, we deem it quite likely that the jury's determination of Stephen's guilt was, at least in part, based upon their consideration of the evidence that Stephen participated in the conspiracy prior to his eighteenth birthday. If the jury relied upon such evidence, and such reliance is impermissible, then the failure of the trial court to give a limiting instruction to the jury would, indeed, be plain error.

**14.** Stephen argues that a ruling such as the one we now make creates a paradoxical situation. Had he been adjudged a juvenile delinquent

under the Federal Juvenile Delinquency Act because of his pre-eighteenth birthday activity, the government would have been prohibited from introducing this adjudication against him in any subsequent adult proceeding. *See* 18 U.S.C. § 5038. Thus, in effect, Stephen argues that he is being penalized for not having been prosecuted as a juvenile. While interesting, we find this argument unpersuasive. Had Stephen been adjudged a juvenile delinquent he would have been remanded to the rehabilitative juvenile authorities of the state. Out of respect for the rehabilitative purposes of juvenile delinquency proceedings, it is completely appropriate to close the record of any juvenile proceedings. However, once Stephen has become an adult the rehabilitative purposes of the act are no longer served by according him any evidentiary privileges. Indeed, the law presumes that once Ste-

■ Common sense suggests that Congress did not intend to bifurcate the prosecution of any continuing offense which began prior to the defendant's reaching the age of eighteen and continued thereafter. The rule proposed by appellant would have just this effect. In the instant case, for example, the government would have been required to prosecute Stephen as an adult for those activities in which he engaged after his eighteenth birthday, and, in a separate proceeding before the juvenile courts, prosecute Stephen for those acts which he did before his eighteenth birthday. Neither the efficiency of judicial administration nor the congressional purpose of extending constitutional protections to juveniles would be served by such a result. Indeed, the more logical and sensible provision is that, once having established that certain acts of the offense occurred after the defendant's eighteenth birthday, the entire case may be tried in accordance with the adult rules of procedure and evidence. Consequently, we hold that evidence of Stephen's activities prior to his eighteenth birthday was admissible in order to prove his guilt and his participation in the conspiracy to distribute cocaine, once sufficient evidence had been adduced that would allow a jury to conclude that Stephen had continued his activities in the conspiracy following his eighteenth birthday.[15]

## III. HEARSAY TESTIMONY

Appellant Roberto Cruz objects to the admission of testimony given by Theodore Jackson, an agent of the Georgia Bureau of Investigation. He contends that Jackson's testimony was inadmissible hearsay evidence.

Agent Jackson testified that while operating undercover he had several dealings with a Miss Jeannette Berry. He then testified that, at one point, he asked Berry if she would introduce him to her supplier.[16] This testimony was highly relevant because Roberto Cruz was arrested at a subsequent meeting between Agent Jackson and Berry. Record on Appeal, vol. 14 at 1831–32. Thus, given Agent Jackson's testimony, the jury could reasonably have inferred that Roberto Cruz was Berry's supplier of cocaine. Agent Jackson requested Berry to bring her supplier and Roberto Cruz appeared.

■ Roberto challenges the admission of this testimony. In effect, he suggests, it amounts to testimony by Berry that Roberto Cruz was her supplier. Because Berry was not on the stand and could not be cross-examined, her implicit assertion that Roberto was a supplier is hearsay evidence and thus, Roberto says, inadmissible.[17] We disagree.

In *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250 (5th Cir. 1980), we recognized that an "out-of-court utterance must have two characteristics before it is rendered inadmissible as hearsay: It must be a 'statement'—that is a verbal

---

phen has reached his majority, the appropriate place for rehabilitation to occur is within the adult system.

**15.** We note that there will be few occasions for the application of this evidentiary rule. Unlike the continuing offense of conspiracy, most crimes occur during a brief period of time. The activities in question are thus unlikely to bridge across a defendant's eighteenth birthday. The factual situation involving Stephen is thus a relatively rare one.

**16.** Question: Without going into what Miss Berry said, what did you tell Miss Berry? Answer: I told her I wanted to purchase a pound of cocaine, that I wanted to meet her source of Cubans, and that is about it.

. . . . .

Question: Why did you ask to meet her supplier, sir?
Answer: So we could get the main source of supply.
[Defense counsel]: Your honor, I also object as being hearsay. This is a statement made by this gentlemen at some other time now being offered to prove it is truthful.
The Court: Objection overruled.
Record on Appeal, vol. 14 at 1847–48.

**17.** It should be noted that in an extensive colloquy, Record on Appeal, vol. 14 at 1835–45, the court determined that Agent Jackson could not testify as to what Berry had said to him. Thus, Jackson's testimony was limited to relating his part of the conversation, i.e., what he said and what he observed.

assertion or conduct intended as an assertion, Fed.R.Evid. 801(a)—and it must be offered to prove the truth of the matter it asserts.... Thus, excluded from the hearsay rule is verbal or nonverbal 'conduct when it is offered as a basis for inferring something *other* than the matter asserted.' " *Id.* at 262 (citations omitted) (emphasis in original). Consequently, an utterance may be admitted to show the effect it has on a hearer, 4 Weinstein & Berger, *Weinstein's Evidence* ¶ 801(c)[01], at 801–77 (1979). Such verbal acts are not in the first instance assertive statements and not offered to prove the truth of the matter asserted.

Jackson's testimony at trial is testimony concerning just such a verbal act. The out-of-court declaration by Jackson (telling Berry to bring her supplier to the next meeting) was not hearsay at all because it was not offered for the truth of any matter. Rather, it only tended to prove that Berry heard such a statement, thus giving rise to the inference that Roberto Cruz was her supplier when she acted upon the request and Roberto did in fact accompany her to the next meeting. Of course, it is relevant whether or not Jackson is now telling the truth in his testimony on the stand; that is, it is relevant whether or not it is true that Jackson did in fact tell Berry at their meeting to bring her supplier. However, the truth of Jackson's testimony now on the stand is fully subject to cross-examination and is not hearsay. In his testimony Jackson is simply relating his own conduct. *Cf. United States v. Day,* 591 F.2d 861, 886 (D.C.Cir.1978) (witness received information from murder victim; his testimony that after witnessing the shooting he called police and gave them the information he received not hearsay).

Moreover, Jackson's out-of-court declaration to Berry ("bring your supplier") is not an assertive statement. It is more in the nature of an order or a request and is, to a large degree, not even capable of being true or false. The statement is offered solely for the fact that it was made and the effect it might have had upon its hearer. *Cf. United States v. Keane,* 522 F.2d 534, 558 (7th Cir.1975) (witness testifies that third party told him to make purchases as swiftly as possible; reporting of statement not hearsay since statement itself is order and not capable of being true or false), *cert. denied,* 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976).

Thus, we reject Roberto's contention that the admission of Agent Jackson's testimony was hearsay.[18]

---

**18.** Appellant's reliance on *United States v. Caro,* 569 F.2d 411 (5th Cir.1978), is inapposite and serves only to highlight the distinction we draw now. There, Agent Baden testified regarding the events following his arrest of one Casillas as follows:

Question: Did you ask Mr. Casillas any questions?
Answer: Yes, sir, I did.
Question: All right, what questions did you ask Mr. Casillas?
Answer: I asked Mr. Casillas to whom the heroin belonged. I asked him where he was supposed to take the money to after he received it from the undercover agents. I asked him to whom the automobile belonged that he was driving.
Question: Okay.
Answer: I asked him if he would take us to the place and the person to whom he was to pay the money.
Question: Following this conversation that you had with Mr. Casillas, what did you do then if anything?

Answer: I participated with the other agents, sir, and I went out to Moon City, about four or five vehicles, I believe, altogether, sir. *Id.* at 417 n. 10.

The reasonable inference from this testimony is that Casillas told Agent Baden that drugs were to be delivered in Moon City. The effect is therefore to testify inferentially as to what Casillas actually said during the conversation even though he is not on the stand. No party suggested that this testimony had a different admissible purpose. In the instant case, however, Jackson is not testifying even inferentially to what Berry might have said to him during the conversation he had with her. The inferences to be drawn only reflect the effect that his words would have had on her subsequent actions. While the *Caro* court was concerned with the truth of Casillas' inferred out-of-court statement, here no out-of-court statement by Berry can or need be inferred.

## IV. OTHER ISSUES

■ Carlos contends that his concurrent sentences for the substantive possession counts and for the conspiracy count of the indictment must be vacated because, as a matter of law, they merge with his conviction under 21 U.S.C. § 848 for engaging in a continuing criminal enterprise. We have previously held that the § 846 offense of conspiracy is a lesser-included aspect of the § 848 offense of engaging in a continuing criminal enterprise. *United States v. Graziano,* 710 F.2d 691, 699 (11th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); *see also Jeffers v. United States,* 432 U.S. 137, 149–50, 97 S.Ct. 2207, 2215, 53 L.Ed.2d 168 (1977). Consequently, as the government concedes, Carlos' sentence under the conspiracy charge must be vacated. We have also held, however, that it is not improper for a trial court to impose cumulative sentences on a defendant for the continuing criminal enterprise offense and for the predicate substantive narcotics possession offenses. *United States v. Dennis,* 786 F.2d 1029, 1049 (11th Cir.1986). Thus, Carlos' sentences on the substantive possession counts must stand.

■ After the close of the government's case, Carlos moved, pursuant to 18 U.S.C. § 4241(a), for a competency hearing to determine if he was fit to stand trial. We have held that a trial court may rule on a § 4241 motion of incompetency without benefit of a full dress hearing so long as the court has no "bona fide doubt" as to the competence of the defendant. *Scarborough v. United States,* 683 F.2d 1323, 1325 (11th Cir.1982), *cert. denied,* 459 U.S. 1220, 103 S.Ct. 1225, 75 L.Ed.2d 460 (1983). The legal test for competency is whether the defendant had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and whether he had "a rational as well as factu-

al understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). Carlos offered the testimony of Dr. Brendi, a psychiatrist from the Veterans Administration, who testified that Carlos was suffering from a post-Viet Nam stress syndrome. The effect of this was to cause him to have memory lapses which, Carlos contends, rendered him incompetent to stand trial. After hearing Dr. Brendi's testimony in full, the trial court concluded that Carlos had not established a bona fide doubt as to his competency, noting that Dr. Brendi's testimony was speculative, that his opinion was reached without the benefit of defendant's previous medical or psychiatric records, and that his opinion was based upon a single interview with the defendant in which Dr. Brendi relied for his conclusions on Carlos' presumed veracity. The trial court of course also had the benefit of its observations of defendant's demeanor.[19] We have carefully reviewed Dr. Brendi's testimony; the deficiencies noted by the district court are well taken. In addition, we note that the only impediment cited by Dr. Brendi as being detrimental to defendant's ability to understand the proceedings and assist in his defense was an asserted deficiency in defendant's capacity to recall. In *Adams v. Wainwright,* 764 F.2d 1356, 1361 (11th Cir.1985), we noted that the ability to recall was not determinative of a defendant's ability to "fully understand the proceedings against him and cooperate meaningfully with his attorney in his defense." Based upon the particular circumstances of this case, we conclude that the district court did not err in finding that Carlos had failed to establish a bona fide doubt as to his competency.

■ Appellants also challenge the prosecutor's use of the cooperating witness' plea agreements to bolster their testi-

---

**19.** The district court's conclusion is confirmed by subsequent proceedings before it. Carlos' claim of memory lapse is belied by his later affidavit in support of his co-defendant Irwin's motion for a severance. Record on Appeal, vol. 3 Doc. 163. Carlos there asserts that at a separate trial for Irwin he would testify that she was not present at several meetings where he allegedly arranged narcotics transactions and that, at those meetings at which she was present, she had no knowledge of the meetings' purpose. Carlos thus demonstrates an adequate recall of the events involved in his indictment.

mony on direct examination. We have previously held that the general statements contained in a plea agreement requiring a witness to testify truthfully should not be used during direct examination and should be introduced on re-direct only if the credibility of the witness is attacked on cross-examination. *See United States v. Hilton*, 772 F.2d 783, 787 (11th Cir.1985). Other circuits have recognized an exception to this general rule which allows a prosecutor to elicit testimony regarding the truth-telling portion of a cooperation agreement during direct examination if the witness' credibility has been attacked by the defense counsel in his opening argument. *See United States v. Smith*, 778 F.2d 925, 928 (2d Cir.1985). We adopt this sensible and prudent measure. In this case, the entire thrust of several defendants' arguments was that the testimony of the government's cooperating witnesses could not be trusted. The attack on these witnesses' credibility began from almost the first words of the defendants' opening statements. *See, e.g.*, Record on Appeal, vol. 6 at 39–42, 76–77, 81–82, 96–97, 100, 101. Consequently, there was no error in the prosecutor's presenting evidence concerning the plea agreements during direct examination under the facts and circumstances of this case.

Appellants also contend that it was error for the district court to receive partial jury verdicts. Such a procedure is, however, expressly authorized by the Federal Rules of Criminal Procedure. Fed.R.Crim.P. 31(b) ("If there are two or more defendants, the jury at any time during its deliberations may return a verdict or verdicts with respect to a defendant or defendants as to whom it has agreed; if a jury cannot agree with respect to all, the defendant or defendants as to whom it does not agree may be tried again."). Upon a review of the record, we determine that there was no error in the manner in which the trial court received the jury verdicts. *See United States v. DiLapi*, 651 F.2d 140, 146–47 (2d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *United States v. Ross*, 626 F.2d 77, 80–81 (9th Cir.1980).

We have closely examined the remaining various allegations of error made by appellants. They are all without merit and warrant no discussion.

## V. CONCLUSION

For the foregoing reasons, the order of the district court is affirmed in all respects but two. Carlos Cruz' conviction for violating 21 U.S.C. § 846 merges with his continuing criminal enterprise conviction and his sentence on § 846 is vacated. Because drug trafficking offenses are not crimes of violence within the definition of 18 U.S.C. § 16(b), Carlos', Roberto's and Irwin's convictions on the § 924(c) firearms count must be reversed.

AFFIRMED in part, VACATED in part, and REVERSED in part.