[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-12926

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RICHARD BOND,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:19-cr-00021-LAG-TQL-14

————————————————

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Richard Bond appeals his sentence of 140 months' imprisonment for conspiracy to possess with intent to distribute methamphetamine. Bond challenges the application of an enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon based on the actions of his co-conspirators. On appeal, he argues that evidence that other co-conspirators had firearms is not "relevant conduct" unless that evidence was within the scope of his own drug transactions. After careful review, we affirm.

**I.**

A grand jury indicted Bond and seventeen others on a charge of conspiracy to possess with intent to distribute methamphetamine, a violation of 21 U.S.C. §§ 841 and 846. The conspiracy's ringleader operated a methamphetamine-distribution conspiracy from a home located at 159 Alison Drive, Cairo, Georgia. Customers like Bond would regularly buy methamphetamine for redistribution. Bond bought about 100 grams of methamphetamine from the conspiracy's ringleader at multiple locations, including the home at 159 Alison Drive.

The ringleader and other participants in the conspiracy had readily available firearms. On at least one occasion, a confidential informant observed a firearm during a drug transaction. Surveillance on another defendant led to a traffic stop, during which the

police found about two kilograms of methamphetamine, two cell phones, and a handgun. And when agents searched the home at 159 Alison Drive, they found six ounces of methamphetamine and five handguns.

Bond pleaded guilty. Because Bond was responsible for about 100 grams of methamphetamine, he was assigned a base offense level of 30. Bond received a two-level increase under United States Sentencing Guidelines § 2D1.1(b)(1) because "a dangerous weapon was possessed." The presentencing investigation report stated that the conspiracy's ringleader and other participants "had firearms readily available," including at the home at 159 Alison Drive. Bond knew that the conspiracy's ringleader and others were distributing methamphetamine from the home at 159 Alison Drive, and he went inside it at least once.

Bond received a two-level decrease for acceptance of responsibility and a one-level decrease for his timely entry of a guilty plea. *See* U.S.S.G. § 3E1.1(a) & (b). He thus had a total offense level of twenty-nine, and a criminal history category of V. That calculation resulted in a Guidelines imprisonment range of 140 to 175 months.

Bond filed objections to the presentencing report, including an objection to the two-level increase for firearm possession under U.S.S.G. § 2D1.1(b)(1). At his resentencing, which occurred after a separate appeal that we resolved on other grounds, Bond renewed his objection. Bond clarified that he was not disputing whether a firearm was present at the home at 159 Alison Drive. Instead, he was making a "purely legal argument" about whether the

enhancement applied to him. The district court ultimately over-ruled that objection. The district court resentenced Bond to 140 months of imprisonment. Bond appealed.

## II.

We review the district court's legal interpretation of the Sentencing Guidelines *de novo*. *United States v. Carillo-Ayala*, 713 F.3d 82, 87 (11th Cir. 2013). We review whether a firearm was possessed under section 2D1.1(b)(1) as a factual finding under the clear-error standard. *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (citation modified).

## III.

Bond argues that we should reverse the district court because the weapons found on his co-conspirators were not within the scope of his jointly undertaken criminal activity. We reject that argument.

The Sentencing Guidelines provide for a two-level enhancement in drug cases "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Under the Sentencing Guidelines, an enhancement may apply to "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. §

1B1.3(a)(1)(A). In the case of joint criminal activity—*e.g.*, schemes, enterprises, and conspiracies—an enhancement may apply to "all acts and omissions of others that were . . . (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(B).

Bond challenges only the district court's determination as to the first part of the test—whether the firearm was possessed within the scope of jointly undertaken criminal activity. The parties argue a great deal about the commentary to section 1B1.3(a)(1)(B). But we need not—indeed, cannot—turn to the commentary to resolve a question about a Guidelines provision that is less than genuinely ambiguous, such as this one. *See United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (en banc).

For the dangerous weapon enhancement to apply, "[t]he government bears the initial burden of showing by a preponderance of the evidence that a firearm was present at the site of the charged conduct or that the defendant possessed a firearm during conduct related to the offense of conviction." *United States v. Graham*, 123 F.4th 1197, 1288 (11th Cir. 2024). And "[p]roximity between guns and drugs alone is sufficient for the government to meet that initial burden." *Id.* "If the government meets its initial burden, the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was clearly improbable." *Id.* (citation modified).

Here, it is not a close question that the possession of firearms was within the scope of Bond's jointly undertaken criminal activity. The government presented unrefuted evidence that firearms were openly present at the home at 159 Alison Drive. That location is where Bond bought at least some of the methamphetamine for re-distribution—the primary objective of the conspiracy charge for which he was convicted. Thus, the government met its initial burden of establishing that a firearm was present at the site of the charged conduct. *See Graham*, 123 F.4th at 1288.

Bond, however, has failed to establish that any connection between the guns and the methamphetamine distribution was "clearly improbable." U.S.S.G. § 2D1.1(b)(1). Bond tries to position himself as a mere buyer of methamphetamine and says that his co-conspirators' use of weapons was outside the scope of his purchases. But he is mistaken. Bond was not convicted of solely buying or possessing methamphetamine; he was convicted of being part of a conspiracy to possess with intent to distribute methamphetamine. Simply put, Bond was a drug-trafficker, and many of our decisions have observed that "guns are a tool of the drug trade" and that "[t]here is a frequent and overpowering connection between the use of firearms and narcotics traffic." *United States v. Isnadin*, 742 F.3d 1278, 1305 (11th Cir. 2014) (citation modified); *see also United States v. Folk*, 754 F.3d 905, 910–11 (11th Cir. 2014) (same); *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) (same); *United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986) (same).

We thus cannot say that, on this record, it was clear error for the district court to conclude that firearm possession was outside the scope of Bond's jointly undertaken criminal activity.

## IV.

We **AFFIRM**.